JAMES ASHFORD v. STATE OF NEBRASKA.

FILED JANUARY 3, 1893. No. 4708.

1. **Criminal Law**: CONFESSIONS. In a criminal prosecution the confession or admission of the accused is not alone sufficient to justify a conviction. That the crime charged has been committed must be established by other testimony. A voluntary confession may be proved for the purpose of connecting the accused with the offense.

2. ———: BURGLARY: PROOF. On a trial for burglary, under section 48 of the Criminal Code, an essential element of the crime is that the breaking and entering were committed in the night season, and unless this element is proved beyond a reasonable doubt, the accused should be acquitted.

3. ———: ———: PLEADING. In such a case the intent with which the breaking and entering were done must be proved as laid in the information.

4. ———: SUFFICIENCY OF EVIDENCE. Evidence in the case *held* insufficient to sustain the verdict and judgment.

ERROR to the district court for Douglas county. Tried below before CLARKSON, J.

*A. C. Read* and *J. D. Pilcher,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

NORVAL, J.

Plaintiff in error was tried and convicted in the court below of the crime of burglary and adjudged to be imprisoned in the penitentiary for the term of seven years. From that judgment he prosecutes error.

The information charges, in substance and effect, that the plaintiff in error, in the night season of the 23d day of February, 1890, in Douglas county, broke and entered a dwelling house owned by Jettie Reynolds, with intent to commit the crime of larceny.

It is urged that the evidence fails to support the verdict, and this is the only ground on which a reversal is asked.

It appears that Jettie Reynolds, the complaining witness, kept a house of prostitution in the city of Omaha, and that the plaintiff in error, who is a colored man, had been in her employ as a servant for some time prior to Christmas, 1889, at which date he was discharged. The evidence introduced by the state shows that about 2 o'clock on the morning of February 23, 1890, Jettie Reynolds, before retiring, locked the doors of her house, and when she arose about 9 o'clock in the forenoon of that day it was discovered that the doors of the house had been unlocked, and were open, and also that pots, containing plants, had been taken from a window in the pantry and placed upon the floor. It was further established that when plaintiff in error was arrested, which was a few days after the alleged burglary, he had upon his person several keys which would unlock the doors of the house in controversy.

Upon the trial one Sarah Payne, a cook in the employ of Jettie Reynolds, testified that on the evening of February 24th the accused had a conversation with the witness in which he stated that he entered the house about 4 o'clock in the morning of the day laid in the information, through the pantry window, which he had opened for that purpose, and that he went out the same way that he entered.

The defendant offered some testimony tending to prove an *alibi*.

This prosecution is brought under section 48 of the Criminal Code, which provides that "if any person shall, in the night season, willfully, maliciously, and forcibly break and enter into any dwelling house, shop, office, store house, mill, pottery, factory, water craft, school house, church, or meeting house, barn or stable, warehouse, malt house, still house, railroad car factory, station house, or railroad car, with the intent to kill, rob, commit a rape, or with intent to steal property of any value, or commit any felony,

every person so offending shall be deemed guilty of burg-
lary, and shall be imprisoned in the penitentiary not more
than ten nor less than one year." One of the essential in-
gredients of the crime charged is that the breaking and
entry were done in the night time. There is absolutely no
testimony in the record as to the exact time the house was
entered, except the admission of the defendant already re-
ferred to. Aside from his admissions the proofs only es-
tablish that the entry was made some time between the
hours of 2 and 9 in the morning; but whether it was
before or after daylight does not appear. There is also a
lack of evidence as to the location of the Reynolds house,
as to whether it is situated in the quiet or busy portion of
the city and as to whether there were other residences or
houses in the same vicinity. If located in the heart of the
city the probabilities that the entry was made before day-
light would be greater than if situated in a more sparsely
settled portion. The admission of the defendant was com-
petent evidence, not for the purpose of proving that the
crime alleged had been committed, but for the purpose of
connecting the accused with the offense. In a criminal
prosecution every element constituting the crime must be
proved by evidence other than the mere admissions or
confessions of the accused. As was said by Maxwell, C.
J., in his opinion in *Priest v. State*, 10 Neb., 399: "That
a crime has actually been committed must necessarily be
the foundation of every criminal prosecution, and this
must be proved by other testimony than a confession, the
confession being allowed for the purpose of connecting the
accused with the offense." There can be no doubt of the
correctness of the rule stated, and applying it to the facts
in the case at bar it is clear that the evidence fails to show
beyond a reasonable doubt that the house was broken and
entered into in the night season, and therefore the crime of
burglary is not made out.

We must not be understood as intimating that in a pros-

ecution for burglary the time when the breaking and entering into the building were committed must be established by direct proof, and cannot be inferred from the facts and circumstances surrounding the transaction, for, doubtless, that ingredient of the offense may be established like any other fact in a criminal case. What we wish to be understood as holding is, that, from the facts proved in this case, it could as well be inferred that the defendant broke and entered the house in the day-time as in the night season.

Again, there is no evidence as to the intent with which the breaking and entering were done. It is charged in the information that they were made with the intent to steal and carry away the goods and chattels of Jettie Reynolds. That such was the purpose will not be presumed from the mere fact of breaking and entering into the building. It is conceded that nothing was stolen therefrom by the defendant. Had there been, then, from that fact, it might be inferred that the object and purpose of the accused was larceny, since the presumption is that every sane person is presumed to have intended that which his acts indicate his intentions to have been. (3 Greenleaf Ev., sec. 13.) In this case there is no direct evidence of the object of the person in entering the building, which at the time was occupied by the complaining witness and others. If the intention or purpose was theft, why did he not accomplish it, as there was nothing to prevent him from so doing? It is not claimed that he was discovered in the act by any one, and that by reason thereof he was frightened away before carrying out his purpose. Doubtless there are cases where the motive with which a person breaks and enters a building may be presumed from the act alone. If one, in the night time, was to break and enter a building containing hardware, jewelry, clothing, or other property of value, belonging to another, and in which building there was no person at the time of the breaking, his act alone, unex-

plained, would be very strong evidence that it was done for the purpose of committing the crime of larceny. But we do not think from the mere act of breaking and entering a house like the one in question, occupied at the time by the proprietress and others, that it must necessarily be presumed that the motive or intention was larceny rather than the commission of some other crime. In a prosecution for burglary, in determining the intention of the defendant, it is proper to consider the act of breaking and entering the building in connection with all the other facts and circumstances of the transaction disclosed by the evidence.

After having carefully examined the testimony in the bill of exceptions, we think it insufficient to sustain the verdict. The judgment is reversed and the cause is remanded to the court below for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.