[No. 1480.]

## STATE OF NEVADA, RESPONDENT, v. AUSTIN GRAY, APPELLANT.

CRIMINAL LAW—BURGLARY—SUFFICIENCY OF EVIDENCE.—In a case in which defendant was charged with burglary, committed June 4th, by entering a barn in the night-time and stealing therefrom a saddle, a verdict of guilty was not supported by evidence as to the time the saddle was taken, the evidence showing that it was last seen in the barn at 6 o'clock in the evening and was discovered to be gone at 7 o'clock the next morning, under a statute defining the "night-time" as the period between sunset and sunrise.

IDEM—TIME, ESSENTIAL ELEMENT OF THE OFFENSE.—Time is an essensial element of the crime of burglary, and the evidence, in order to support a conviction of that offense, must be of sufficient weight to convince an impartial jury, beyond a reasonable doubt, that the defendant not only committed the larceny, but that it was committed during the period between sunset and sunrise.

IDEM—LARCENY—POSSESSION OF STOLEN PROPERTY.—The possession of stolen property alone is not sufficient to justify a conviction for the larceny of that property.

APPEAL from the Second Judicial District Court, Washoe county; A. E. Cheney, District Judge:

Austin Gray and Frank McIntire were convicted of burglary, and Gray appeals. Reversed.

The facts sufficiently appear in the opinion.

Curler & Curler, for Appellant:

I. The mere fact of the possession of stolen property is not sufficient to authorize a conviction. (State v. Jones and Bryan, 19 Nev. 366; State v. Ah En, 10 Nev. 277; State v. Clifford, 14 Nev. 72.)

II. The breaking or entering the stable, so far as the evidence discloses, might have been at any time within a period of three hours and forty-nine minutes, viz: from 6 o'clock to eighteen minutes past 7 P. M. on June 4, or from thirty-nine minutes past 4 to 7 o'clock P. M. on June 5, 1896, and not have been in the night-time, and therefore not have been burglary, and there is no evidence to show that the stable was entered in the night-time.

III. Burglary, and breaking and entering a house in the daytime, are two separate and distinct offenses, and they cannot be made to constitute one and the same offense. (People v. Taggart, 43 Cal. 81.)

*Robt. M. Beatty,* Attorney-General, and *Frank H. Norcross,* District Attorney, for Respondent.

By the Court, BIGELOW, C. J.:

The defendant was convicted, with one McIntire, of the crime of burglary, alleged to have been committed June 4, 1896, by entering a barn, in the night-time, in the town of Reno, and stealing therefrom a saddle. One ground of the appeal is that the evidence is insufficient to justify the verdict. In our opinion, this point is well taken. Burglary is the entering of a building in the night-time, with or without force, for the purpose of committing certain crimes therein. " Nighttime " is defined by the statute as the period between sunset and sunrise. One of the essential elements of the crime of burglary is that the felonious entry must have been in the night-time, as above defined. The evidence showed that the saddle in question was in the owner's barn before 6 o'clock in the evening, and that at 7 o'clock in the morning it was gone. The door of the barn was left open during the night. That one Miss Moe lived in the same block in which the barn was situated, but the defendants lived in another part of the town. That early on the morning of June 5th, but how early does not appear, these three people left the town, starting from Miss Moe's house. The next day the officers overtook them on a road running from a place called the Cedars, about twelve miles from Reno, to the town of Reno, traveling towards Reno, and found this saddle in the possession of the defendant Gray. When asked where he got it, he said it belonged to McIntire; that the day before McIntire had traded a little bay mare for it. McIntire spoke up and said that the day before a Spaniard whom he did not know had met them near the Cedars and bantered them for a trade, and he had traded his mare for the Spaniard's horse and saddle—that being the saddle in question.

Upon the part of the defense it was shown that, in company with Miss Moe, they left town, as has been stated, somewhere about 6 o'clock in the morning for the Cedars, where they were going for several purposes; that during the day McIntire traded for the saddle, as they told the officers. They staid at a cabin at the Cedars over night, and started

for Reno the next morning, Gray having changed saddles with McIntire for the purpose of trying the new saddle.

It is a well-settled rule of law that the possession of stolen property alone is not sufficient to justify a conviction for the larceny of that property. (*State* v. *Jones and Bryan*, 19 Nev. 366; *State* v. *Ah En*, 10 Nev. 277.) Personal property passes so easily from hand to hand, that it was found that reliance upon such evidence alone was too liable to result in the conviction of innocent men for it to be depended upon. Generally, however, this evidence does not stand alone. There are other circumstances usually surrounding the case having more or less tendency to connect the possessor with the theft, if he be guilty, and where such evidence is given, it is generally held sufficient to support the verdict. Whether such circumstances exist here or not, we need not determine. The defendant was convicted of burglary, and, admitting that the evidence was sufficient to support the conclusion that the defendants entered the barn and stole the saddle therefrom, there was absolutely nothing to prove that it was done in the night-time, and nothing from which that fact could be inferred. We may suspicion quite strongly that it was, but suspicions, however strong, are not sufficient to convict men of crimes. There must be evidence of every essential element of the crime, and it must be of sufficient weight to convince an impartial jury beyond reasonable doubt.

It is evidence of the crime itself that is missing here. It is impossible to say that a burglary was committed by anybody, and, as already stated, if we were to admit it was proven that the defendants took the saddle, it is quite as possible that they took it after arriving at Miss Moe's house, after sunrise, as before. We know that in June 6 o'clock in the evening is some time before sundown, and 7 o'clock in the morning several hours after sunrise, and there is nothing to show it was not taken during either period, instead of between them.

In *State* v. *Watkins*, 11 Nev. 30, it was shown that certain articles, which were in a room at 9 o'clock at night, were missing in the morning; that it was impossible for anyone to have taken them without entering the room, and they were found in defendant's possession between 12 and 1

Points decided.

o'clock that night. To the objection that the evidence did not establish the burglary, the court said: "It was necessary to show that the entry was effected in the night-time, and proof that defendant had in his possession, outside of the house, between 12 and 1 o'clock, goods which were in the house at 9 o'clock, and which could only have been obtained by entering the house, was proof of an entry in the night-time, and, taken in connection with the other proof, completely established the *corpus delicti.*" That case illustrates what would be sufficient proof upon this point, and, by contrast, tends to show the weakness of the evidence in this case.

Judgment reversed and cause remanded.