SIMON, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 9—June 23, 1905.*

*Criminal law and practice: Burglary: Remarks of trial judge: Trial: Evidence: Competency.*

1. On a prosecution of one charged with the crime of burglary, the complaining witness, after several questions as to how she fixed the nighttime of a certain day in making the charge against the defendant, demonstrated that she had no personal knowledge on the subject. She was then asked: "I would like to know how you fix the date, the particular date, or that particular night?" Whereupon the court remarked: "What materiality is there in that question? Supposing it happened any time in the month of August, he could be convicted under this same charge, then why is the question material? If it happened any time that week that is enough." The charge to the

jury was very precise as to the legal meaning of the term "night-time," and that, in order to convict, it was necessary to find that the house was broken and entered during such time. *Held*, that there was no support in the record for a contention that the court's remarks tended to impress upon the jury the fact that whether the offense was committed in the nighttime or not was immaterial.

2. Where a motion to strike out a witness's answer as not responsive to the question was made before the witness completed his answer, and the motion promptly granted as soon as the answer was completed, no error can be predicated on such proceedings, based on the incompetency of the answer.

3. In a prosecution for burglary the evidence is *held* sufficient to warrant a conviction.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Affirmed.*

Plaintiff in error was convicted of having committed the offense of burglarizing the house of Harriet L. Cutter. She was absent therefrom continuously between twilight of August 22, 1904, and the afternoon of August 25th thereafter, no one being left in charge thereof. In the meantime the house was broken into by some one and the crime of larceny committed by taking and carrying away property therefrom. Miss Cutter, promptly upon her return and discovery of the occurrence, notified the police department of the city of Milwaukee thereof; and soon thereafter the accused was arrested as being the guilty person, and as having committed the crime in the nighttime. Upon his being placed on trial therefor there was evidence to this effect: The entry to the house was through a basement window, which, except for darkness, was in plain sight from the street and other residential grounds and residences in the vicinity. He left it at a basement door, having forced that open from the inside so as to mutilate the same considerably. The house was located in a residence locality. Other houses were close by. In the daytime people were accustomed to frequently pass by on the sidewalk and street in front thereof. The opportunity for one so circum-

stanced to see a person or hear such an occurrence as the one in question while it was in progress, if it happened in the daytime, was such that in such circumstances it would have been most likely to have attracted attention. Several inside doors of the house were forced by using a chisel and a large iron taken from the furnace, the doors being considerably mutilated in the process. Bureau drawers and other places where Miss Cutter kept her valuables were searched and a considerable number of articles taken and carried away. Soon after the police department was notified of the occurrence two policemen who knew thereof met the accused coming from a pawnshop. His appearance and conduct aroused their suspicion. They intercepted him and during the conversation which ensued they discovered an opera glass on his person,— one of the stolen articles. It had been mutilated apparently in a way to interfere with identification. He explained his possession thereof by saying that he purchased the same in St. Louis or Cincinnati several months before, giving $7 therefor. He said he had no grip or trunk; that he was a mere transient, lodging from house to house, and that he was without property other than the opera glass, a cigar holder, and a small pocketbook which were on his person. Later, by means of a card taken from him, the place where he had been stopping was discovered, and upon its being visited a trunk belonging to him was found, which was well filled with articles unsuited to the use of such a person, including most of the property that had been stolen from the house. He then informed the officers, in reply to an inquiry, that they had all the property taken from Miss Cutter's house, which proved to be substantially if not wholly true. On another occasion he claimed to have purchased the articles for $10, from a man he met on the street whom he did not know, the stranger at first asking $20, and that the latter wrote his name as Mueller in the pocketbook before mentioned, which was one of the stolen articles. The name, in fact, written in the book

was Miss Cutter's, but it was written in such a way that the accused read it as Mueller. He claimed to be a carver by trade. He had no fixed place of abode and had been in Milwaukee but a day or two when the offense was committed. There were other incriminating circumstances, but the substance of the evidence, in the main, has been stated.

The cause was submitted on the brief of *Charles J. Faber* for the plaintiff in error, and for the defendant in error on that of the *Attorney General* and *Walter D. Corrigan,* assistant attorney general.

MARSHALL, J.    There was no claim that Miss Cutter was in Milwaukee on the day the offense was committed, or that she had any personal knowledge as to the particular day or time when it occurred. Notwithstanding that, on cross-examination, she was pressed by counsel for the accused to state how, in making the charge against him, she fixed upon the nighttime of August 24, 1904. After several questions in that regard had been answered, demonstrating that the witness had no personal knowledge on the subject, this one was asked: "I would like to know how you fix the date, the particular date or that particular night?" Whereupon the court remarked: "What materiality is there in that question? Supposing it happened any time in the month of August, he could be convicted under this same charge, then why is the question material? If it happened any time that week that is enough." It is insisted that such remark tended to impress the jury that, whether the offense was committed in the nighttime or not was immaterial. We see no reasonable support in the record for that. It shows from beginning to end that the trial court and counsel for the prosecution fully recognized that it was necessary to establish as a fact that the offense was committed in the nighttime. The jury must have understood the remark as referring to the fact that the precise date, not time of day, was immaterial. The charge to the jury was very precise as

to the legal meaning of the term "nighttime," and that in order to warrant a conviction of the offense charged it was necessary to find that the house was broken and entered during such time.

One of the officers, who discovered some of the stolen property in the trunk belonging to the accused, commingled with other property, said, speaking of the former which was exhibited in court, that he found all that, and "also a large amount of stolen property that was later identified as taken from a residence in St. Paul." The answer, as regards the other property having been stolen in St. Paul, was not responsive to the question. A motion was made to strike it out before the witness completed his answer. As soon as he was through answering, the court promptly granted the motion. No error can be predicated on such proceedings in regard to whether the answer was competent or not.

Further complaint is made that the evidence was insufficient to warrant the jury in deciding that the dwelling-house was broken and entered in the nighttime. Sufficient appears in the statement of facts to show that the evidentiary circumstances very strongly suggested utter improbability of the house having been broken into in the daytime. The place where the entry was effected, as regards opportunity for seeing the offender in the act, and the disturbance of things in the house were such as to render it highly unreasonable to suppose that the event could have occurred in the daytime without attracting the attention of some one while it was in progress; and highly unreasonable that any one would attempt such a thing, under the circumstances, except under cover of darkness, since opportunity for choosing such an occasion was ample. The verdict on this point is well supported by the evidence.

*By the Court.*—The judgment is affirmed.