[Crim. No. 613.   Third Appellate District.—April 7, 1922.]

THE PEOPLE, Respondent, v. GEORGE WILLIAMS,
Appellant.

[1] CRIMINAL LAW—BURGLARY—DEGREE OF CRIME—EVIDENCE.—In this
prosecution for burglary the evidence was sufficient to warrant the
jury in finding that the defendant committed the burglary and
that the crime was committed in the night-time.

APPEAL from a judgment of the Superior Court of
Sacramento County.   Malcolm C. Glenn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Charles F. Metteer for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Dep-
uty Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the crime
of burglary of the first degree and appeals from the judg-
ment of conviction and from the order denying his motion
for a new trial.

The building burglarized is on 4th Street, between L and
M, in the city of Sacramento, in what the appellant describes
in his closing brief as "the densely populated oriental section
of the city."   The owner left the building on Saturday eve-
ning, October 1, 1921, at 8:30, and on his return the next
morning at 8:30 he discovered that the place had been
entered from the rear and fifteen pairs of trousers, eight
or nine coats, and between fifty and sixty shirts stolen.   The
defendant was arrested October 5th.   Prior to his arrest the
defendant sold two of the stolen shirts to a man on the
street and a pair of the stolen trousers at a second-hand
store, signing the name "Harry Wilson" instead of his own
at the latter place.   At the trial he denied having sold the
two shirts but admitted that he sold the trousers.   He denied
having signed the name "Harry Wilson."   In explaining his
possession of the trousers, he testified that on the fourth day
of October there were ten or twelve men gambling under
the Yolo end of the M Street bridge and that one of them
"went broke in the game, and he asked several fellows if—

who wanted to buy the pants; by me being a little ahead of the game, he asked me, and I paid him a dollar and a half for the pants.'' W. M. Hallahan, detective sergeant of the Police Department of Sacramento, testified that he interviewed the defendant prior to his arrest and that the defendant at first denied having sold any trousers at a second-hand store but later admitted that he had sold a pair, not involved apparently in this case, at a second-hand store October 3d; that witness ''asked him where he got them. He says he was shooting crap or playing cards with a bunch of fellows down along the river front there. A fellow sold them to him for a dollar and a half.''

[1] A reversal of the case is asked on two grounds: 1. That there is no evidence connecting the defendant with the commission of the crime. 2. That there is no evidence tending to show that the burglary was committed in the night-time. There can be no doubt that the evidence is sufficient to warrant the jury in finding that the defendant committed the burglary. The only evidence, other than that stated, tending to show that the burglary was committed in the night-time is that of a witness who saw two men in the alley near the place where the entry was made at 10:30 in the evening. One of them was about the height of the defendant and the other was small. The witness was within about twelve feet of them but could not tell whether they were white or colored. The defendant is a colored man. The witness did not testify to any suspicious or unusual conduct on the part of these men and his testimony must be treated as of slight value.

Appellant correctly states that the burden is on the prosecution to prove beyond a reasonable doubt that the burglary was committed in the night-time and he contends that this burden has not been sustained. In support of his contention he cites a number of cases. In some of them the circumstances proved are less convincing than those of the instant case. In others the surrounding facts and circumstances are not stated. That of *People* v. *Griffin,* 19 Cal. 578, was tried prior to the enactment of the statutory definition of the term ''night-time.'' The court said that at the time of the entry ''there was light enough out of doors to discern a man's features across the street. . . . The presence of sufficient daylight to discern a man's features has long been

adopted as a criterion to determine whether or not the act was done in the night-time within the law applicable to burglary.'' In *State* v. *Gunderson,* 56 Wash. 672 [21 Ann. Cas. 350, 106 Pac. 194], the ship burglarized was in sole charge of a keeper who was absent all day and returned in the evening. On arising the next morning he for the first time discovered that a burglary had been committed. In *Waters* v. *State,* 53 Ga. 567, the burglary ''was committed within a period of about forty or forty-five minutes, one-half of which was day, and one-half was night.'' In *State* v. *Gray,* 23 Nev. 301 [46 Pac. 801], the defendant entered a barn and took a saddle therefrom between the hours of 6 o'clock in the evening of June 4th and 7 o'clock the next morning. The defendant left town early in the morning of June 5th—how early does not appear—starting from the residence of a woman who lived in the same block in which the barn was situated. The opinion does not disclose whether the vicinity was thickly or sparsely settled. In *Leisenberg* v. *State,* 60 Neb. 628 [84 N. W. 6], the burglary was committed March 29th between 6:30 P. M. and 9 o'clock of the same evening, the surrounding circumstances not appearing from the decision. In *Ashford* v. *State,* 36 Neb. 38 [53 N. W. 1036], the evidence showed that the burglary was committed between the hours of 2 A. M. and 9 A. M. of the same day. The court said: ''There is also a lack of evidence as to the location of the Reynolds house [the place burglarized], as to whether it was situated in the quiet or busy portion of the city, and as to whether there were other residences or houses in the same vicinity. If located in the heart of the city, the probabilities that the entry was made before daylight would be greater than if situated in a more sparsely settled portion.'' In all of the cases thus far considered the evidence was held insufficient to show an entry in the night-time.

In this case the burglary was committed in a densely populated part of the city and the articles stolen were of considerable bulk. It is highly improbable that the defendant would take the risk of breaking into the building and carrying away these bulky articles in broad daylight in a populous section of the city. In *People* v. *Dupree,* 98 Mich. 28 [56 N. W. 1047], the court said: ''When a merchant enters his store in a city at the usual hour in the morning,

though it be after daylight, and finds that it has been broken open and entered from the front door or window, it is contrary to good sense to say that the crime might have been committed after daylight, and therefore the court must direct an acquittal. Such crimes are not committed in broad daylight, but in the night-time. The question was one for the jury, and not for the court." In *People* v. *Tracy,* 121 Mich. 318 [80 N. W. 21], a barn was burglarized. The court said: "The property stolen consisted of two large horse blankets, a set of single harness, a bridle, and a pair of hopples. The owner of the property was a farmer. Another farmer lived within twenty rods on one side, and another within forty rods upon the other side. . . . The property was bulky, and it is not probable that one would run the risk of breaking into a building situated as these were, in daylight, and of carrying away property of this character. The chance of detection would be too great. The question was for the jury." In *Simon* v. *State,* 125 Wis. 439 [103 N. W. 1100], the burglary was committed between twilight of August 22d and the afternoon of August 25th, the owner of the house being absent in the meantime. The court said: "The entry of the house was through a basement window, which, except for darkness, was in plain sight from the street and other residential grounds and residences in the vicinity. The house was located in a residence locality. Other houses were close by. In the daytime people were accustomed to frequently pass by on the sidewalk and street in front thereof. . . . The place where the entry was effected, as regards opportunity for seeing the offender in the act, and the disturbance of things in the house were such as to render it highly unreasonable to suppose that the event could have occurred in the daytime without attracting the attention of some one while it was in progress, and highly unreasonable that anyone would attempt such a thing, under the circumstances, except under cover of darkness, since opportunity for choosing such an occasion was ample. The verdict on this point is well supported by the evidence." (See, also, *State* v. *Bancroft,* 10 N. H. 105.) In the case of *People* v. *McCarty,* 117 Cal. 65 [48 Pac. 984], where the burglary was committed June 13th, the court said: "The defendant and others constructed a tunnel some 120 feet in length from the cellar of a certain

saloon to a point immediately beneath the floor of a certain bank building in the city of Los Angeles, for the purpose of committing larceny. Upon the day set for the actual entry through the floor into the building the defendant and his confederates, some time during the afternoon, entered the cellar, one of them emerging therefrom at 7 o'clock P. M. . . . The others came out of the cellar at 12 o'clock that night. The burglary was committed by these men at some time during these hours. The finding of the jury on this question was a matter peculiarly within its province; and upon this evidence the court will not disturb the verdict in this regard." Under the foregoing authorities there can be no doubt that the evidence is sufficient to sustain the verdict.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.