GRAY and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*March 12—April 13, 1943.*

*James Murray,* attorney, and *James R. Murray* of counsel, both of Fond du Lac, for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *S. Richard Heath,* district attorney of Fond du Lac county, and oral argument by *Mr. Platz.*

MARTIN, J.  The dwelling of Edmund Feldner, located on Highway 38, about three fourths of a mile west of the village of Rosendale in the town of Fond du Lac, Fond du Lac county, Wisconsin, was burglarized on the night of June 19, 1941. Mr. Feldner and members of his family retired at about 8:30 p. m.  When he retired his overalls and two suits of clothing were hanging on a hook in his bedroom.  His winter overcoat was in a room next to his bedroom.  When Mr. Feldner arose at 5:30 a. m. the following morning he noticed that his overalls, his two suits, and overcoat were missing and that some of the rooms of his residence had been ransacked.  He found his overalls and the vest and coat of one suit lying outside.  One suit, the overcoat, and trousers of the other suit were missing.

At about 1 a. m., on June 20, 1941, George Habeck, a truck driver, left the city of Fond du Lac for Ripon and Berlin via Highway 38.  When he reached a point on said highway about three fourths of a mile west of Rosendale, in the immediate vicinity of the Feldner residence, he saw three Negroes, whom he later identified as the defendants, with their car parked

alongside the road. Defendants followed Habeck to Ripon. At Ripon they inquired of Habeck as to the direction to Fond du Lac. He gave them the proper direction, whereupon defendants left but did not go in the direction which had been given them. The facts here related took place between 1 and 2:30 a. m. on June 20th.

Defendants had a black La Salle sedan bearing Illinois license plates. On June 20th, at about 6 p. m., Robert Shiels, a deputy sheriff of Fond du Lac county, was directed to investigate concerning a black sedan automobile bearing Illinois license plates, which was parked on Highway 41, a few miles south of the city of Fond du Lac. Shiels found three Negroes in the sedan automobile, which was headed toward Fond du Lac. He asked them where they were going. They said they were going to Chicago. He then requested that they open the rear compartment, or trunk, of the car, which they did. The officer found the articles of clothing which had been taken from the Feldner home the night before. Upon inquiry of the officer as to why they needed an overcoat, one replied that they were up on a fishing trip from Chicago and the nights got quite cold around Fond du Lac. The officer replied that he did not believe their statement. They then said they had won the clothing or bought it at a crap game alongside the road. They said that two Mexicans came along as they were parked and asked whether they would play craps; that after the game they purchased the overcoat from one of the Mexicans for $2.50. They made no reference to purchasing or winning the other articles of clothing.

The officer took the three Negroes to the county jail and there separately questioned them the following day. Defendant Mangrum stated that they got to Fond du Lac at about 12:30 or 1 a. m. on June 20th. He later stated that they had left Milwaukee at 3 a. m. on June 20th. He told of shooting craps with a Mexican known as "Mexican Joe." It appears that there was a person in Fond du Lac commonly

known as "Mexican Joe." Officer Shiels located Mexican Joe, brought him to the county jail, and confronted each of the defendants separately. They each denied knowing him, and Mexican Joe denied ever having seen any of the defendants. Feldner identified the clothing at the county jail as his, which had been taken from his residence on the night of June 19th. Habeck identified the defendants as the three Negroes he saw, and the black sedan with the Illinois license plates as the car on the roadside near the Feldner residence between 1 and 2:30 a. m. on the night of June 19th. Defendants, when separately questioned at the county jail, made many conflicting statements as to how they came into possession of the stolen clothes; as to their purpose in coming to Fond du Lac; and as to the time of their arrival in Fond du Lac. They denied having been west of Fond du Lac and in the neighborhood of Rosendale.

To the information charging burglary of a dwelling in the nighttime with intent to commit larceny, defendants entered a plea of not guilty. The jury found defendants guilty in the manner and form as charged in the information. Defendants contend that the evidence did not establish beyond a reasonable doubt that the Feldner dwelling was burglarized in the nighttime. Sec. 353.32, Stats., defines the term "nighttime" as follows:

"The term 'nighttime,' when used in any statute, ordinance, indictment or information shall be construed to mean the time between one hour after the setting of the sun on one day and one hour before the rising of the same on the following day; and the time of sunset and sunrise shall be ascertained according to the mean solar time of the ninetieth meridian west from Greenwich, commonly known as central time, as given in any published almanac."

Sunset on the evening of June 19th was at 7:39 p. m., and sunrise on the morning of June 20th was at 4:23 a. m. Thus, nighttime, within the meaning of the statute, on the night in

question, was from 8:39 p. m., June 19th, to 3:23 a. m., June 20th. Defendants argue that since Feldner testified that he retired about 8:30 p. m. on June 19th, and that he arose at about 5:30 a. m. the following morning, his dwelling may have been burglarized either in the daytime or in the nighttime, and that therefore the state failed to establish that the crime had been committed in the nighttime as alleged in the information. It is definitely established that the crime was committed sometime between 8:30 p. m., June 19th, and 5:30 a. m., June 20th. The witness Habeck testified that he left the city of Fond du Lac at about 1 a. m. on June 20th. Rosendale is about eleven miles west of the city of Fond du Lac. According to Habeck's testimony, he would, with normal driving, have arrived at the place where he saw the three defendants and their parked car in the immediate vicinity of the Feldner residence at about 1:30 a. m. The circumstance of defendants having been seen in the immediate vicinity of the burglarized residence at the time fixed by Habeck, well warranted the jury in concluding that the burglary had been committed in the nighttime. See *Simon v. State,* 125 Wis. 439, 103 N. W. 1100; *Winsky v. State,* 126 Wis. 99, 102, 105 N. W. 480. In the latter case, referring to *State v. Bancroft,* 10 N. H. 105, it is said:

"There was no direct proof that the burglary was committed in the nighttime, other than the fact that the property was in the house after dark and was missing the next morning when the witness arose; and the court said that this evidence 'led very strongly to the conclusion that it was taken in the course of the night, although the precise hour when the witness called it dark did not appear, and the time when she arose in the morning was not stated. At whatever time in the morning the loss was discovered, the jury might well weigh the probability whether the article would have been taken from the house in the daytime, in connection with the other evidence. It was sufficient that, upon the whole case, they had no reasonable doubt that the act was done in the nighttime.'

Sufficient appears from the evidence in the case before us to warrant the jury in finding that the entry was made in the nighttime. *Simon v. State, supra.*"

Defendants next contend that the stolen property was received in evidence before the *corpus delicti* was established. There is no merit in this contention. The evidence shows that such proof was made before the clothing in question was offered and received in evidence. Feldner first testified to the fact that his dwelling had been burglarized and to the articles of clothing which had been stolen. He then identified the stolen clothing. The clothing which had been marked as exhibits was not offered in evidence until after proof of the crime and the connection of the defendants with the burglary was established.

Defendants next contend that the articles of clothing were obtained by illegal search and seizure, and therefore were not admissible in evidence. In this connection the record shows that the articles of clothing found in the trunk of defendants' automobile were identified and marked Exhibits 1 and 4 to 7, inclusive. The articles of clothing identified and marked Exhibits 1 to 3 were brought into court by Mr. Feldner. Exhibit 1 was first seen after the burglary by Mr. Feldner at the sheriff's office. Exhibits 2 and 3 were the articles of clothing found by him on the morning following the burglary of his dwelling, on the ground outside. These three exhibits were offered and received in evidence without objection. Subsequently, after Officer Shiels had testified that he found a number of articles of clothing, not mentioning any of the exhibits by number, he was asked, "What were some of these articles?" To this question defense counsel objected as follows:

"That is objected to, Your Honor, on the ground that it is very plain to the court now that this is an illegal search and seizure, and in that connection I move now that all the exhibits introduced be stricken."

The objection was overruled. Exhibits 4 to 7 had not yet been introduced; Exhibit 1 had not been identified by Officer Shiels as having been taken from defendants; and Exhibits 2 and 3 were not among the articles found in defendants' automobile. They were brought into court by Mr. Feldner. The motion to strike all exhibits was properly overruled. After Officer Shiels had testified, and after all the articles of clothing had been identified, the state offered in evidence Exhibits 1 to 7, inclusive, which were then received without any objection. The defendants testified in their own behalf. None of them offered any evidence to support the contention that the search of their car was illegal. On that point Officer Shiels testified as follows:

"*Q.* When you were out on the road there and asked them to open up the car they consented to do it, did they? *A.* Yes, sir.

"*Q.* And it was a peaceful search, was it? *A.* Yes, sir."

In *State v. Drew,* 217 Wis. 216, 221, 257 N. W. 681, it was held that on a motion to suppress evidence because of an unlawful seizure, the burden of establishing that his rights have been transgressed is upon the party asserting such transgression. The only suggestion in the instant case as to an illegal search and seizure is defense counsel's objection above quoted. Officer Shiels did not open the rear compartment of defendants' car. The defendant Mangrum, the owner of the car, opened its rear compartment at the request of the officer. The mere fact that the so-called search and seizure was made at the instance of the police officer does not establish that consent on the part of the defendants was involuntary. The search was legal as incident to a legal arrest of defendants for vagrancy under sec. 348.351, Stats. The vagrancy charge was dropped and the complaint in the instant action was made and filed in the municipal court of Fond du Lac county on June 30, 1941, on which date said court issued warrants for

the arrest of the defendants. The evidence seized incident to the search in connection with the arrest of defendants on a charge of vagrancy was properly admissible in the instant prosecution for burglary in the nighttime, it having been legally obtained in the first instance. *Scaffido v. State,* 215 Wis. 389, 254 N. W. 651. In that case, page 393, referring to *Silver v. State,* 110 Tex. Crim. 512, 8 S. W. (2d) 144, 9 S. W. (2d) 358, it is said:

"That information received by a police officer over the radio as to commission of a crime and the description of the offenders is sufficient probable cause, when coupled with discovery of persons answering the description, to justify a search without warrant of the automobile in which they are traveling."

In *Carroll v. United States* (1925), 267 U. S. 132, 153, 45 Sup. Ct. 280, 69 L. Ed. 543 (search and seizure under National Prohibition Act), the court said:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motorboat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant *because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.*" To same effect see 56 C. J. p. 1202, sec. 94, and cases cited under notes 15, 16, and 17.

All the exhibits referred to above, identifying the different articles of clothing, were properly received in evidence.

Defendants further contend that the court erred in the admission and rejection of evidence, in instructions and failure to instruct, and in denying defendants' motion to set aside the

verdict. We have examined the alleged errors and conclude that the court did not err in any of these respects. The verdict has ample support in the evidence.

*By the Court.*—Judgment affirmed.