THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FRANCISCO TORRES PÉREZ, Defendant and Appellant.

No. 16263. Submitted August 24, 1959.—Decided February 12, 1960.

*Elí B. Arroyo* for appellant. *J. B. Fernández Badillo, Attorney General,* and *Carlos G. Látimer, Assistant Attorney General,* for the appellee.

Mr. Justice Saldaña delivered the opinion of the Court.

Francisco Torres Pérez was prosecuted in the Superior Court, Ponce Part, for an offense of burglary in the first degree. He was charged with ". . . entering illegally, willfully, maliciously and criminally . . . during the nighttime of April 17, 1955, in Adjuntas, Puerto Rico, the residence of Justina Vélez widow of Vera with the intent to commit, as he did commit, grand or petit larceny . . . ". After a trial by a court without a jury, he was found guilty and sentenced to serve an indeterminate sentence of from one to five years' imprisonment. In this appeal he prays for the reversal of said judgment. He alleges that the lower court erred: (1) In finding the defendant guilty, notwithstanding the fact that The People did not prove the illegal entry in the complainant's property; (2) In finding the defendant guilty notwithstanding the fact that The People did not prove the defendant's specific intent to commit grand or petit larceny; (3) In permitting The People to prove the identification of the allegedly stolen property through the use of clearly leading questions, thus depriving the defendant of a fair and impartial trial; (4) In rejecting the defense of alibi notwithstanding the fact that the evidence of The People did not rebut said defense; and (5) In the alternative, in finding the defendant guilty of burglary in the first degree notwithstanding the fact that it was not proven that the offense was committed at nighttime.

In the first place it must be decided whether the evidence introduced at the trial is sufficient to support two essential findings: 1st, that the defendant *entered illegally* the residence of Justina Vélez widow of Vera; and 2nd, that

said entry took place *with the specific intent to commit grand or petit larceny.* This is the problem actually raised by the appellant in his first two assignments of error. Primarily we must point out that the prosecuting attorney need not prove with direct evidence those two elements of the offense of burglary. It has been repeatedly held that both the illegal entry and the existence of a specific intent to commit grand or petit larceny are facts that can be proved by circumstantial evidence, that is, by reasonable inferences which arise from the facts and circumstances proved as a whole. *People* v. *Bayron*, 40 P.R.R. 785 (1930); *People* v. *Rivera*, 67 P.R.R. 275 (1947) and *People* v. *Rosado*, 79 P.R.R. 23 (1956). In the case at bar, as the prosecuting attorney states in his brief, the evidence believed by the trial court proved the following: ". . . that on April 16, 1955 the prosecuting witness Justina Vélez widow of Vera, who at that time was living with her daughter Blanca Vera Vélez in a house located on the road of Barrio Garza of Adjuntas, Puerto Rico, left for the city of Ponce to visit another daughter who resided in Villa Grillasca. That before leaving for Ponce they closed the house firmly and upon returning the following day, April 17, 1955, at about 8:00 p.m., they noticed that the house was open and the lights were on. That upon approaching the house both witnesses saw the defendant as he left with a bundle on his head. That upon seeing them the defendant fled and abandoned the bundle on the way. That they entered the house and noticed that a trunk where they kept several sheets, bedspreads, underwear and other objects had been forced open and several objects had been stolen therefrom. They noticed furthermore that a suitcase had also been forced open and several articles had been stolen therefrom. That upon going into the kitchen of the house they noticed that someone had removed a board from the wall, and had opened the door in order to enter the house. That the defendant had wrapped

the articles that he stole in a multicolor blanket belonging to Justina Vélez widow of Vera. Said lady testified that she was sure that it had been defendant Francisco Torres Pérez, whom she saw leaving her house with the stolen objects. Her daughter Blanca Vera Vélez assured the court that it had been the defendant whom she had seen leaving her house on that night of April 17, 1955 and describes him as wearing blue trousers, white shirt and brown and white shoes. She said that she saw the package that he was carrying on his head and recognized the blanket in which he carried said articles as her mother's blanket. Said blanket and other articles were shown to the prosecutrix by the magistrate in court and she identified them as her property and as the ones which had been stolen from her. Said articles were delivered to her by the judge through the corresponding receipt. The witnesses for The People as well as the witnesses for the defense remember exactly the day to which the events refer because it was on Sunday, April 17, 1955, date when some primary elections were being held in Adjuntas." Can it be inferred from those facts and circumstances proved that the appellant not only entered the said residence illegally but that he also did it with the specific intent to commit grand or petit larceny? We believe so. We need only stress the following: (1) the owner of the house and her daughter had left for Ponce leaving their residence firmly closed and upon returning they saw the appellant leaving the house with a bundle full of objects that he had stolen from a trunk and from a suitcase which were within the house; (2) in order to enter the residence a board from the wall of the house had been torn out and the kitchen door had been opened; and (3) when the appellant saw the owner of the house and her daughter he immediately "ran away and darted into some bamboo trees," leaving the bundle of stolen objects behind. Even from those bare facts it can be logically and reasonably inferred that the appellant

entered the residence illegally and with the specific intent to commit grand or petit larceny. *Cf. People* v. *Rosado,* 79 P.R.R. 23 (1956); *People* v. *Rosado,* 78 P.R.R. 416 (1955); *People* v. *Rivera,* 67 P.R.R. 275 (1947); *People* v. *Bayron,* 40 P.R.R. 785 (1930); *Ex Parte Seyfried,* 264 P. 2d 685; *People* v. *Alvarado,* 331 P.2d 157; Fricke, California Criminal Law (5th ed.), 286–290; Clark & Marshall, The Law of Crimes (6th ed.), 881–891 and Note, *A Rationale of the Law of Burglary,* 51 Colum. L. Rev. 1009–1030 (1951).

 If we analyze the third assignment of error we shall find that it also lacks merit. The following is claimed: ". . . there is no competent evidence to the effect that the package which the judge gave the prejudiced person was the same one that, as it is alleged, the defendant was carrying on his head . . . ," since the prosecuting attorney proved the identification of the said package through a series of "clearly leading questions." [1] It is alleged besides that such identification was essential in order to find the defendant guilty, for which reason the latter was deprived of a fair and impartial trial. We do not agree. First, the prosecuting attorney asked the questions that the appellant now calls "leading" without any objection on the part of the defense. Therefore, although the oral evidence thus obtained were

---

[1] The objection refers to the testimony given by Justina Vélez widow of Vera during the direct cross-examination: "Prosecuting attorney: Was the package that the judge of Adjuntas gave you the same one that the defendant was carrying on his head? A. The same one wrapped in a blanket. Defense: No Your Honor. You asked whether it is the same package that the defendant was carrying. You cannot ask that question. Hon. Judge: Why? Defense: She could say the person who left the house. Hon. Judge: It is not a conclusion; it is a direct perception. Prosecuting attorney: The question is, was that package the same package that the defendant was carrying when you saw him leaving the house? A. The same one. Prosecuting attorney: Wasn't it wrapped in a blanket? A. Yes, sir. Q. Wasn't that blanket yours? A. Yes, sir. Q. Was that blanket the one you saw on defendant's head? A. Yes, sir, and there was also a small stick."

inadmissible, certainly it cannot be attacked for the first time on appeal. See *People* v. *Jiménez,* 78 P.R.R. 7, 11 (1955).

■ Secondly, the fact that he was represented by a public defender does not put the appellant in a better position to make said assignment before us. As the record of the case sufficiently proves the defendant had during the whole prosecution a skillful, effective and competent defense. The failure to object to the leading cross-examination of the district attorney might perhaps seem to us as a mistake or error of the defendant's counsel if we consider *a posteriori* all the incidents of the trial. But it could very well have been a tactic on his part conducive to the best defense of defendant's rights before the trier of facts. In any event, it is a well-settled rule in our case law that the mistakes or errors of the defendant's counsel (whether the latter be a public defender, an attorney designated by the court or an attorney which has been chosen and paid by the defendant himself) cannot be invoked on appeal as a ground for obtaining a reversal of the decision or judgment, in absence of malice, fraud, physical or mental disability or of clear, inexcusable and grave professional incompetence on the part of the attorney who represented the appellant at the trial. *Cf.* Note, *Incompetent Counsel as Ground for New Trial in Criminal Cases,* 47 Colum. L. Rev. 115–122; Note, *Incompetency of Counsel as a Ground for Attacking Criminal Convictions in California and Federal Courts,* 4 U.C.L.A. L. Rev. 400–419 (1955) and cases cited therein.

■ Thirdly, the evidence presented to identify the "package" that the defendant was carrying when leaving the house could not harm in any way whatever his fundamental rights. The reason is simple: before and after the said identification of the "package" there was direct and undoubtedly admissible evidence to establish that the defendant was seen leaving the burglarized residence, that said residence had been broken

into and that numerous objects had been stolen from it. Therefore, taking into account the other evidence presented by the prosecuting attorney, the admission of the testimony to identify the package of stolen objects was not even prejudicial to the defendant. *Cf. People* v. *Negrón*, 79 P.R.R. 279 (1956) and *People* v. *Lampón*, 78 P.R.R. 102 (1955).

■ The fourth error charged against the lower court consists in having rejected ". . . the defense of alibi, notwithstanding the fact that the evidence of The People did not rebut said defense." It appears from the record that the sole defense set up by the defendant was that of an alibi. To prove that he was in another place at the time and date of the offense charged in the information, the defense presented the testimony of the defendant himself and of three more witnesses. However, with the testimony of the owner of the house and her daughter, the evidence of the prosecuting attorney tended to identify the defendant as the person who left the burglarized house with a bundle on his head at 8:00 p.m. on April 17, 1955. Both saw him as he faced the light of three electric bulbs from within and outside the house. Obviously the trial court did not give credit to the witnesses of the defense and found the defendant guilty on the evidence of the prosecution which is sufficient to rebut the defense of alibi. We found no ground in the record to warrant our disturbing the weighing of the evidence of the trial court. See *People* v. *Rosario*, 80 P.R.R. 307 (1958) and cases cited therein.

■■ However, the appellant argues with determination that ". . . almost at the close of the evidence of the defense the trial judge has doubts as to defendant's presence in the scene of the burglary, which doubt must, perforce, bring about defendant's acquittal. However, departing from the proper order of presenting the evidence the judge calls the prejudiced person, at his own initiative, and asks her whether she was sure it was the defendant whom she saw leaving

her house the night in question. Her answer dispelled the judge's doubt. The circumstances in which the prejudiced person identified the author of the events during the nighttime and while he was running towards some bamboo trees did not contradict . . . the trustworthy testimony of the witnesses for the defense." We cannot agree with that opinion. In the prosecuting attorney's turn of evidence the owner of the house and her daughter in clear and convincing terms identified the defendant as the author of the burglary. At the close of the evidence of the defense the judge called Justina Vélez widow of Vera to the witness stand and asked her the following question: "Under the oath given by you, are you sure that the person whom you saw leaving your house on the night of . . . April 17 was the defendant?" To which the witness answered: "Yes, sir, Francisco Torres." Thus, the owner of the house merely reaffirmed the testimony that she had given previously. Concerning the action of the trial court upon reopening the case after The People had rested its case, in order to ask the owner of the house whether she was sure that she saw the defendant leaving her house at 8:00 p.m. on April 17, 1955, it suffices to say that the judge has discretion at the behest of the party and even officially, to alter the normal order of the presentation of evidence or to have the case reopened when he deems it convenient for the sake of clearly establishing the facts or for discovering with certainty the truth. There is nothing in this case to show abuse of this discretion. See *People* v. *García*, 78 P.R.R. 81, 82–83 (1955) ; *People* v. *Hernández*, 75 P.R.R. 852, 858 (1954) ; and *People* v. *Nieves*, 40 P.R.R. 367, 374 (1929).

In the fifth and last assignment the defendant complains that he was found guilty of burglary in the first degree ". . . notwithstanding the fact that it was not proved that the offense was committed at nighttime." He admits that the phrase "nighttime" means the period between sunset

and sunrise. Section 411 of the Penal Code, 33 L.P.R.A. § 1594. But he maintains that ". . . the time when the defendant entered the house could not be specified, admitting for present purposes that he had entered the house." We believe that said contention is devoid of merit. The evidence presented by the prosecuting attorney proved conclusively that Justina Vélez widow of Vera and her daughter returned to their residence at 8:00 p.m. on April 17, 1955. At that precise moment they both saw under three electric bulbs lit inside and outside the house that the appellant was leaving the place with a bundle full of stolen objects. Later they verified that a board from the kitchen wall had been torn out in order to open the door and enter the house. The residence had been properly closed when they left for Ponce on April 16, 1955. The only stolen objects in the house (bedspreads, sheets, blankets, dresses and underwear) were taken from a trunk and a suitcase that had been forced open. There was a gasoline pump next door to the burglarized home. Also, several neighbors lived in those surroundings although at some distance from the residence. The house is located at the edge of a road in barrio Garza near the town of Adjuntas. We take judicial notice, as the trial court undoubtedly did, that sunset occurred in Adjuntas before 6:45 p.m. on that day April 17, 1955.

Weighing the facts and circumstances as a whole, they tend to prove, if we take into account the inferences that may be derived therefrom, that the offense of burglary in this case was committed after dark. More than one hour and fifteen minutes had elapsed since sunset when the owner and her daughter saw the defendant leaving the house. Obviously to search the house and open a trunk and a suitcase by force are not long-consuming operations. And undoubtedly one must assume that the defendant left the house as soon as possible. On the other hand, experience indicates that in order to enter a house at the edge of the road by

tearing out a board from the kitchen wall the defendant had to wait for nightfall in order not to be heard or seen by passers-by and neighbors. Lastly, if the defendant had entered during the day he would not have lit the living room lights either. In the face of all that circumstantial evidence there is no proof that the defendant entered at daytime since his sole defense was the alibi. [9] Therefore, although the exact hour when the defendant entered the house was not proven by direct evidence, the circumstantial evidence considered by the lower court is sufficient to support its finding that it happened during the nighttime. There is no reason to disturb on appeal the conclusion of the trier of facts. See *People* v. *Rosado*, 79 P.R.R. 23, 25 (1956); *People* v. *Wheat*, 301 P.2d 263 (Cal. 1956); *People* v. *Barrios*, 199 Pac. 58 (Cal. 1921); *Clark* v. *State*, 143 S.W.2d 378 (Tex. 1940).[2] [10] The finding as to the time when a burglary is committed depends almost always on reasonable inferences derived from circumstantial evidence. It is a question that should be decided by the trier of facts, whether it be the jury or the trial judge. [11] The function of the court on appeal is limited to considering whether there is evidence rationally supporting the declaration of guilt which necessarily implies a finding that the offense was committed at nighttime if the verdict is in the first degree. As it has been repeatedly said, the rule that the defendant has the benefit of the doubt concerning the degree of guilt (§ 237 of the Penal Code, 34 L.P.R.A. § 716) only comes into play when the case is submitted to the trier of facts, whether the latter be the jury or the trial judge. But once the defendant is found guilty, after determining as a question of fact that the offense was committed at nighttime, the only test on appeal is the rational sufficiency of

---

[2] See also: *People* v. *Cota*, 190 Pac. 473 (Cal. 1920); *Gray* v. *State*, 9 N.W.2d 68 (Wisc. 1943); *People* v. *Shafer*, 119 Pac. 920 (Cal. 1911); *People* v. *Lowrie*, 87 Pac. 253 (Cal. 1906); and *People* v. *McCarty*, 48 Pac. 984 (Cal. 1897).

the evidence. See *People* v. *Daugherty*, 256 P.2d 911 (Cal. 1953) and cases cited therein. Cf. *United States* v. *Sherman*, 171 F.2d 619 (C. A. 2, 1948) ; *United States* v. *Spagnuolo*, 168 F.2d 768 (C.A. 2, 1948) ; and *United States* v. *Feinberg*, 140 F.2d 592 (C.A. 2, 1944).

We wish to set forth here our recognition to Mr. Elí B. Arroyo, attorney-at-law designated by the court on May 11, 1959, for his competent and disinterested defense of the rights of the defendant-appellant before this Court.

The judgment appealed from will be affirmed.