[Crim. No. 861.  Second Appellate District, Division Two.—May 25, 1922.]

## THE PEOPLE, Respondent, v. JAMES REED, Appellant.

[1] CRIMINAL LAW—BURGLARY—SUFFICIENCY OF EVIDENCE.—In this prosecution on a joint charge of grand larceny and burglary, the evidence was sufficient to justify the conviction of burglary.

[2] ID. — UNEXPLAINED POSSESSION OF STOLEN PROPERTY — CIRCUMSTANCE OF GUILT.—While the mere possession of stolen property,

---

Possession of recently stolen property as evidence of burglary, notes, 19 Ann. Cas. 1281; 12 L. R. A. (N. S.) 199.

Enforcement of contracts of service by courts of equity, notes, 140 Am. St. Rep. 62; 6 L. R. A. (N. S.) 1115.

even if unexplained, is not alone sufficient to fasten a conviction of the theft upon the possessor, the fact of such possession, if unexplained, is an item to be taken into consideration by the jury, together with other incriminating circumstances, in arriving at a verdict.

[3] ID. — JUROR — CHALLENGE FOR CAUSE — CONFLICTING EVIDENCE — APPEAL.—A ruling denying a challenge for cause to a juror on his *voir dire* will not be disturbed on appeal where the examination on its face shows a mess of contradictions, since the finding of the trial court upon such question is, as to its finality, like any other finding of fact made upon conflicting evidence.

[4] ID. — OPINION BASED ON NEWSPAPER REPORTS. — Where a juror has formed an opinion based upon general discussion and newspaper report, he is not disqualified to act if his explanation shows that he will set aside his opinion and give the defendant a fair trial on the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Morfoot & McCroskey for Appellant.

U. S. Webb, Attorney-General, and Arthur Keetch, Deputy Attorney-General, for Respondent.

WORKS, J.—Defendant and one Michael J. Malone were jointly informed against in two counts. One of these charged grand larceny and the other charged burglary, the two alleged offenses arising out of the same transaction. Defendant was tried alone and was acquitted on the grand larceny charge, but was convicted on the burglary charge. He appeals from the judgment of conviction and from an order denying his motion for a new trial of the cause.

[1] Appellant contends that the evidence against him was insufficient to sustain the verdict holding him guilty of the burglary charge. There was no evidence directly connecting appellant with the burglarizing of the house which is shown by the record to have been feloniously entered by some person, the testimony also showing that property of considerable value was taken from the place at the time. The evidence did show that appellant, a day

or two after the burglary, attempted to sell certain of the stolen property then in his possession. The person to whom the offer was made communicated with the police, and appellant and Malone were arrested. No explanation was then given as to how appellant came into possession of the stolen articles, nor, in fact, did he present any evidence upon the subject at the trial. Upon the arrest being consummated, appellant asked the arresting officer if he could see the owner of the house which had been burglarized, saying in effect that he could locate all the stolen property and would return it if the owner would not prosecute him. He also denied to the police officers that he had attempted to sell any of the stolen articles. At the time of his arrest appellant gave his name as James Reed, but there was testimony at the trial to show that the appellation was not his true name. We are convinced that this array of evidence was amply sufficient to justify the verdict of guilty rendered against appellant. [2] It is undoubtedly the law that the mere possession of stolen property, even if unexplained, is not alone sufficient to fasten a conviction of the theft upon the possessor (*People* v. *King,* 8 Cal. App. 329 [96 Pac. 916]; *People* v. *Lang,* 142 Cal. 482 [76 Pac. 232]); but the cases establishing that rule are also to the effect that the fact of such possession, if unexplained, is an item to be taken into consideration by the jury, together with other incriminating circumstances in arriving at a verdict. When the facts shown in this case are compared with the facts of the two cases cited above, and are measured by the law as stated in those cases, there is no doubt left in our minds as to the propriety of the conviction of appellant.

Appellant takes the position that the evidence was insufficient to uphold the conviction of the crime of burglary because the jury declared his innocence of the charge of grand larceny. We cannot ascribe any weight to this argument. The jury might very well have convicted appellant on the larceny charge, but that it did not do so cannot operate to overturn the verdict finding appellant guilty of the other offense. The fact that the jury could split its verdict as it did upon the two charges, while it **may** inspire speculation in the minds of the curious,

gives us no concern in determining the appeal. Having reached the conclusion that the evidence would have supported a verdict of guilty on both charges, we are bound to uphold the conviction which actually resulted upon one of them.

Several other points are stated by appellant, but only one of them is argued. That point, therefore, is the only remaining one to which it is necessary to address ourselves under the many decisions of the courts of review of the state to the effect that points not argued on appeal are points not to be considered, none of which decisions need be cited.

The question now to be determined is whether the trial court erred in denying a challenge for cause interposed by appellant as to one of the jurors who was sworn in the case and who sat in judgment against appellant. Appellant exercised all the peremptory challenges allowed him by law, and the question of the propriety of the denial of the challenge for cause is therefore directly before us. The juror as to whom this challenge was presented testified on his *voir dire,* in response to questions by counsel for appellant, that he had heard the case discussed; that he had read about the facts of the case in the newspapers, that he was inclined to think that what he read in the newspapers had created an impression on his mind or an opinion "about this case," his opinion being, "I thought if they had hold of the right man there couldn't be any doubt about his guilt," but that he did not know whether appellant was the right man. Then followed these questions and answers: "Q. You realize it is a fact that these officers have brought him in here and the district attorney's office filed an information against him— do you think that they have got the right man by reason of that fact? A. I don't know until I hear the evidence. Q. Well, have you got any opinion at this time? A. Not as to his identity, no. . . . Q. Well, does that discussion that you had, does that leave you with any fixed impression about this case? A. Yes, I think it does. The Court: Did you discuss as to the guilt or innocence of this defendant? A. No. It was about the details of the alleged crime. The Court: Well, that is not controverted,

the fact that the house was robbed—that is not controverted.
Mr. Morfoot: No, there is no controversy about that.
. . . Do you feel that you could fairly try this case
as to the guilt or innocence of this defendant? A. I
doubt if I can, because I thought it was a particularly
heinous offense. . . . Q. So that you feel that you are
prejudiced against this defendant in this case? A. Well,
to be perfectly frank, I feel that I would be. Q. Could
you not give him a fair and impartial trial. A. No.
Well, I might be able to do that. Q. . . . Now, if you
were on trial under such circumstances, and you had a
man sitting there feeling as you do, would you be willing
to have a man of that opinion that you have at this time
try you? A. No. Q. Then you would admit, wouldn't
you, that you are prejudiced towards the defendant? A. I
am prejudiced against the person who committed this
offense, yet he may be— Q. You don't feel that you can
try James Reed in this case with a fair, impartial and
open mind? A. I don't believe I could." Here the chal-
lenge was interposed. It was resisted by the district
attorney, who then conducted the following examination
of the prospective juror: ". . . You heard the details of
a burglary that occurred . . . in Mr. Lewis' home . . . ?
A. Yes. Q. Now, at that time did you hear anybody's
name mentioned in connection with the commission of that
burglary? A. No. That made no impression upon me
at all. Q. You don't know anything about this defendant.
A. No. Q. Never saw him before. A. No. Q. Or heard
of him. A. No. Q. You don't know whether he com-
mitted this crime or not? A. No. I haven't any idea.
Q. Notwithstanding this opinion about this house being
burglarized in the manner in which it was, do you feel
you could hear the evidence and weigh the evidence
fairly and impartially and give this defendant a fair
and impartial trial, just the same as you could anybody
else? A. Well, Mr. McCartney, I am placed in a position
where the burden of proof would be on the defendant."
The trial judge then subjected the talesman to the fol-
lowing examination: "The Court: If you were a defendant,
arrested for an offense, would you consider that you ought
to prove yourself not guilty or that the state ought to prove

you guilty? A. No. Q. What evidence do you have that this defendant is guilty? A. I haven't any at all. Q. Why do you say that you would want him to prove himself innocent? A. Well, I would try to differentiate between this defendant and the man who committed this crime—if I make myself clear. Q. Well, that is what you are impaneled for, to determine who committed the crime—not whether a crime has been committed; that is conceded in this case, that this house was burglarized; now, the question to be submitted to you is whether this defendant is the man. Now, you say that you would expect the defendant to prove that he was innocent? A. I would not go quite that far, your Honor, to say that I would expect him to prove it, but I would go into the case with a feeling that it was perhaps, in a ways, up to him. Q. Why? A. Because I was very much struck at the details of this alleged crime as I heard it. I thought it was absolutely an unpardonable thing. Q. . . . Now what is there in that to show that the defendant is guilty? A. Nothing at all. Q. Well then, why couldn't you try the defendant and give him a fair, impartial trial? A. I intended to say that I felt that I could, but that I would not like to be tried by a jury that had the same mental attitude that I have. Q. Well, you say you haven't any mental attitude against the defendant—you don't know him, never heard of him. Suppose they had Mr. McCartney up for it; would you be prejudiced against him? A. Not at all. Q. Well you haven't any more evidence that the defendant committed it than you have that Mr. McCartney committed it? A. Not in the least. Q. Why couldn't you try the defendant just as well as you could try Mr. McCartney? A. Well, it is possible that I could, your Honor. Q. Is there any reason why you could not, I say, is there any reason why you could not try this defendant? A. Oh, I believe I could set aside what prejudice I have, and give the man a fair trial. Q. (By Mr. McCartney.) The question is, would you? A. Oh, yes, I certainly would."

[3] On its face, this examination shows a mess of contradictions, but we have grave doubts whether these apparent contradictions actually reflect the condition of

mind of the talesman at the time. The phrasing of his answers shows him to have been a man of considerable intelligence, in fact, of a degree of intelligence which could not harbor the confusion which his words appear to exhibit between a prejudice or feeling against the nature of the crime and a prejudice against the man who was merely charged with its commission. We greatly fear that this juror was one of those men who so far forget the duties and obligations of their citizenship as to attempt to escape them when put to the test, and that he entered the jury-box with a determination to escape jury service in this case if he could possibly do so. Unfortunately, that manner of man is not a *rara avis*. If, however, this position is not tenable, it is enough to say that the trial judge was better qualified than are we, he having had the talesman under his eye, to resolve the apparent contradictions in his statements and to determine whether he would make an impartial juror. There is surely enough evidence among the varying statements in the record to support the ruling of the trial court in denying the challenge, and the finding of a trial court upon such a question as is here presented is, as to its finality, like any other finding of fact made upon conflicting evidence (*People* v. *Ruef*, 14 Cal. App. 576 [114 Pac. 48, 54]).

[4] It is to be observed, also, that the opinion which some of the answers of the talesman when taken alone indicate that he held concerning the guilt of appellant was based upon general discussion and newspaper report. It has been held in this state, both frequently and uniformly, that where a juror has formed such an opinion upon such a basis he is not disqualified to act if his examination shows, as the examination in this instance did show, that he will set aside his opinion and give the defendant a fair trial upon the evidence (*People* v. *Warner*, 147 Cal. 546 [82 Pac. 196]; *People* v. *Brown*, 148 Cal. 743 [84 Pac. 204]; *People* v. *Ruef, supra*).

The judgment and the order denying motion for a new trial are affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 24, 1922.

All the Justices concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.