[Crim. No. 620.    Third Appellate District.—June 28, 1922.]

THE    PEOPLE, Respondent, v. WILLIAM    HOWARD
et al., Appellants.

[1] CRIMINAL LAW — LARCENY — POSSESSION OF STOLEN GOODS — PRE-
SUMPTIONS.—While evidence of the recent unexplained possession
of stolen property, standing alone, is not sufficient to justify a
verdict of guilty of larceny, where goods have been feloniously
taken and they are immediately or soon thereafter found in the
possession of a person who gives a false account, or refuses to
give any account, of the manner in which he came into possession
thereof, proof of such possession and guilty conduct is presumptive
evidence that he stole the goods; and if the goods have been felo-
niously taken by means of a burglary, such proof would also be
presumptive evidence that he made use of the means by which
access to them was obtained.

[2] ID.—KEEPING COMPANY WITH THIEF—COMPLICITY IN CRIME.—The
mere circumstance that a person may be found in the company of
a person known to have committed a larceny is not legally suffi-
cient to establish his complicity in the commission of such crime.

APPEAL from a judgment of the Superior Court of
Sacramento County. C. P. Vicini, Judge Presiding. Af-
firmed as to one defendant; reversed as to other.

The facts are stated in the opinion of the court.

William Howard, Arthur Fields, Walter Corbett and
C. A. Wilkins, *in pro. per.,* and Frank C. Thomas for Ap-
pellants.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

HART, J.—The defendants were by information jointly
charged and thereunder tried for the crime of grand lar-
ceny, and were convicted of the crime so charged. They
and each of them appeal from the judgment of conviction
and the order denying their motion for a new trial.

The defendants appeared for trial without an attorney,
having previously, and at the time of their arraignment

1. Possession of recently stolen property as evidence of burglary,
notes, 19 Ann. Cas. 1281; 12 L. R. A. (N. S.) 199.

upon the charge alleged against them in the information, refused to accept the offer of the court to appoint an attorney or attorneys to conduct their defense, preferring themselves to manage the trial of their case, which they did.

The ground upon which they base their claim to a reversal is that the evidence is insufficient to support the verdict, and, after a careful reading of the evidence, we have been convinced that the point must be sustained as to three of the defendants.

The property alleged in the information to have been stolen by the defendants was a Willys-Knight touring car automobile, of the value of $1,780, and the property of Dr. J. H. Haile, of the city of Sacramento, in which place the alleged larceny is charged to have been committed.

It appears that on the night of the 16th of October, 1921, the car mentioned in the information was stolen and driven away from the garage of Dr. Haile, at 2319 N Street, in said city. The larceny was immediately, upon the discovery of the theft, reported to the Police Department. A few days later, the car, stripped of nearly every equipment of an automobile, except the engine, was found in a garage in the town of Florin, in the county of Sacramento.

It further appears that near the time at which the Haile car was stolen an automobile belonging to one A. W. Clifton had been stolen from his garage at Colonial Heights, near the city of Sacramento; and that Clifton had reported the theft to the police. Clifton, on discovering his loss, proceeded to look about the immediate neighborhood for some possible clue which might lead to a discovery of the whereabouts of the car, when he found on and picked up from the street, at a distance of about two hundred feet from his garage, a package of written documents, among which were some tax receipts, the latter being for the payment of taxes on the premises at 3030 First Avenue, Sacramento, and in the name of "Carl Smedin." All these papers Clifton turned over to the police. The matter of the investigation of the theft was assigned to Police Officer Dill, who immediately proceeded to the premises referred to in the tax receipts. Inquiring first at a near-by corner grocery as to the identity of the owner or

occupant of said premises the officer learned that the said premises had recently been purchased by Carl Smedin, and that the latter was at that moment at or near the grocery store, the grocerman pointing him out to the officer. Smedin and a man named Boutin, then in Smedin's company, were placed under arrest, handcuffed together, and taken to the premises by the officer. Leaving Smedin and his companion, still handcuffed as indicated, on the outside of the house, the officer entered the building, went to the second story thereof and there found the defendants asleep in one room, Wilkins and Howard lying on the floor and Fields and Corbett together in a bed. He awoke and placed the four under arrest.

The first or ground floor of the building was used as a garage and the upper story as a sleeping-room. On the first floor or the garage part of the building the officer found the Clifton car and in the second story, in different places therein, found certain missing parts of Dr. Haile's car. These parts consisted of the battery, dash-board, four tires, tubes, rims, carbureter, choke-wire, head-lights, and a new license-plate, the latter bearing the number 589,319, being the number assigned to Haile's car by the state motor vehicle department. All these parts were of a Willys-Knight car and were sufficiently identified by Dr. Haile and others well acquainted with his car as parts belonging to the automobile stolen from the doctor as above explained.

Smedin was not charged with the larceny of the car or any participation therein, but testified for the people, stating that, a short time before the date of the arrest of the defendants, he rented the premises at 3030 First Avenue, where the Clifton car and the automobile parts belonging to the car of Dr. Haile were found by the officer, to the defendant, Corbett; that the latter stated that he desired to use the lower floor as an auto-repair shop and the upper floor as a sleeping apartment. Smedin testified that Corbett said to him, at the time he leased the premises, that he (Corbett) might permit his "partners" to live "upstairs" with him, to which suggestion Smedin replied that that would make no difference to him—that Corbett might allow any person he desired to occupy the sleeping apartment with him. Smedin further stated that he knew nothing about the Clifton car or the parts taken from the

Haile car or how or by whom they were brought to the garage.

Corbett, the only one of the defendants testifying in the case, declared that he and Smedin, a few days prior to the time that he and the other defendants were arrested, entered into a partnership for the purpose of conducting at the premises in question an auto-repair shop; that Smedin was to finance the enterprise, while Corbett, who is an auto repairer by occupation, was to do the mechanical work. He testified that Smedin brought the mechanical equipments taken from the Haile car to the premises at 3030 First Avenue in a truck on the Saturday preceding the arrest of the defendants, but that he did not know where or under what circumstances Smedin obtained the parts. On his cross-examination, however, it was shown ·and, indeed, Corbett admitted, that, at the preliminary hearing of the charge, he swore that he had no connection with the premises where he and his codefendants were arrested, that he had never leased said premises, that he was stopping there only temporarily with the consent of Smedin, and most of the time while there was engaged with the latter in carrying on the nefarious business of ''bootlegging'' and also in seeing how much liquor he could drink. At the trial he admitted that the testimony so given by him at the preliminary examination of the charge was false, but explained that thus he told a falsehood about his connection or want of authoritative connection with the premises because he was in fear that, if he admitted his true connection therewith, he would be arrested and prosecuted for ''bootlegging.''

The above involves, substantially, a statement of all the important testimony received at the trial. As to the defendant, Corbett, we think the evidence sufficient to make the case one for the jury. The verdict implies that the jury found that he was, as Smedin testified, the lessee of the building in question and as such had sole possession of it and the contents at and prior to the time at which the parts of the Haile car referred to were found in the upper story thereof.

[1] It is well settled that, while ''evidence of the recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty of larceny''

(*People* v. *Boxer*, 137 Cal. 563, 564 [70 Pac. 671, 672];
*People* v. *Nichols*, 39 Cal. App. 29, 34 [177 Pac. 861]),
yet it is equally settled that, where goods have been feloni-
ously taken and they are immediately or soon thereafter
found in the possession of a person who gives a false ac-
count, or refuses to give any account, of the manner in
which he came into possession thereof, "proof of such pos-
session and guilty conduct is presumptive evidence that he
stole the goods," and, we may add, if, as perhaps was
true in this case, the goods had been feloniously taken by
means of a burglary, such proof would also be presumptive
evidence that "he made use of the means by which access
to them was obtained." (*People* v. *Lang*, 142 Cal. 482 [76
Pac. 232]; *Davis* v. *People*, 1 Park. C. R. (N. Y.) 447;
*Knickerbocker* v. *People*, 57 Barb. (N. Y.) 365; *Regina* v.
*Exall*, 4 Fost. & F. 923; *Walker* v. *Commonwealth*, 28
Gratt. (Va.) 969; *Methard* v. *State*, 19 Ohio St. 363;
Wharton's Criminal Law, sec. 763 et seq.; *People* v. *Flynn*,
73 Cal. 511 [15 Pac. 102]; *People* v. *Smith*, 86 Cal. 238
[24 Pac. 988].) In the last-named case the court said:
"The evidence of the recent possession of stolen property,
together with the defendant's statement and the circum-
stances surrounding the transaction, were sufficient to war-
rant the jury in their verdict" of guilty.

The case made against Corbett comes squarely within the
rule stated above.

As to the defendants other than Corbett, we cannot find
in the evidence sufficient reason for holding that they
were in any measure or sense responsible for or connected
with the commission of the crime charged in the informa-
tion. There is absolutely no proof disclosed by the record
that Fields, Howard, and Wilkins, or either of them, took
any part in the stealing of the Haile car or that they had
any hand in taking the parts of the stolen car found at
the premises in question. All that was shown as to those
three defendants was that they were found asleep at the
premises in the room in which Corbett was also at the
same time found asleep and in which the mechanical equip-
ments of the Haile car were found. This circumstance may
be considered to be sufficient to justify a suspicion that
they were mixed up with Corbett in the larceny of the car,
but it is obviously wanting in sufficient probative effect to

justify their conviction of the crime charged. They were not shown to have any interest in the premises other than as mere guests of Corbett. There is not a particle of evidence, other than the mere circumstance of their presence at the premises where parts of the stolen car were found at the time of the arrest, that they were in a prearranged criminal league with Corbett to steal automobiles or the Haile car. [2] It certainly would involve a proposition quite perilous to the liberty of many decent and law-respecting citizens if it were true that the mere circumstance that a person may be found in the company of a person known to have committed a larceny was to be regarded as legally sufficient to establish his complicity in the commission of such crime. But that circumstance alone is not sufficient to establish guilt, and, as that is all that was shown against the three defendants we are now referring to, it is very clear that nothing approaching a legal case of guilt was made against them.

Accordingly, as to the defendant Corbett, the judgment and the order are affirmed, but, as to the defendants Fields, Howard, and Wilkins, the judgment and the order are reversed.

Burnett, J., and Finch, P. J., concurred.