[Crim. No. 2167. Second Appellate District, Division Two.—February 9, 1932.]

.THE PEOPLE, Respondent, v. WILLIAM L. RUSSELL, Appellant.

James F. Curtin for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

FRICKE, J., *pro tem.* — Appellant was convicted by a jury of burglary in the second degree, his motion for a new trial denied and, having been previously convicted of a felony, he was sentenced to imprisonment in Folsom penitentiary. The sole point raised on this appeal is that the evidence is not sufficient to sustain the conviction.

The proof shows that Miss Jane Torkington on July 19, 1931, left her apartment at about 9:45 A. M. and did not return until about 10:15 that evening, at which time she found the door to the apartment unlocked, that her radio was gone, papers were scattered on the floor and the drawer in the dresser had been disturbed. Miss Torkington testified that she had given no one permission to enter the apartment and take the radio. A Mrs. Schmidt, who occupied the same apartment, testified that she left the premises at about 1 P. M., at which time she locked the door of the apartment, that she did not return until about 10:30 P. M. and that she had given no one permission to take the radio. This evidence was sufficient to establish that a burglary had been committed and that the radio was stolen in the perpetration thereof. (*People* v. *Cota*, 47 Cal. App. 224 [190 Pac. 473]; *People* v. *Reed*, 68 Cal. App. 19 [228 Pac. 361]; *People* v. *Williams*, 57 Cal. App. 267 [207 Pac. 255]; *People* v. *Flynn*, 73 Cal. 511 [15 Pac. 102].)

The evidence connecting appellant with the burglary shows that on the night of July 25, 1931, the defendant, driving alone in an automobile at a high rate of speed, was stopped by deputy sheriffs and placed under arrest after an automatic pistol was found in his car. The stolen

radio was found in defendant's room in the home of his mother. When first asked, on the day of his arrest, six days after the burglary, by a deputy sheriff about the radio, appellant stated that he had purchased it about two weeks previous. The mother of appellant was called as a witness in an effort to prove that on the day of the burglary her son was confined to his bed by sickness, but curiously the date of confinement by illness was fixed by her as July 21st, two days after the burglary had occurred, and, when asked concerning his whereabouts on July 19th, she declared she did not remember. The mother also testified that the radio involved in the burglary had been brought to her home on July 22d by a man named William Bradley, who wanted to exchange it for a radio she owned and to have the difference apply on room rent; that she assigned a room to him but no agreement was arrived at; that he never came back and that she had moved the radio into appellant's room. She also admitted that although the officers had informed her that the radio had been stolen she did not tell them anything about William Bradley having brought it to her home; neither did she so inform them when they removed the radio two days later. Appellant testified that he was present when William Bradley brought the radio to the house and also testified that he had not told the officers anything about the radio. William Bradley testified that he had not brought the radio to appellant's home and that he had not been near there for over a year. On rebuttal one of the deputy sheriffs testified that on July 25th appellant's mother had told him that the radio belonged to her son and that he had brought it there about two or three weeks previously.

The jury was fully justified in the conclusion that the stolen radio was found in appellant's room six days after it was stolen, that appellant's first statement that he had bought it two weeks before his arrest was false, and that the story of William Bradley bringing the radio to defendant's home was not only false but that it was concocted after the officers had questioned both appellant and his mother and after they both realized the impossibility of truth in their former statements to the effect that the radio came into appellant's possession over a week before it was stolen.

■ While it is true that the mere possession of stolen property is not sufficient to connect a defendant with the perpetration of the burglary in which the property was taken, it is a circumstance which may be considered by the jury in connection with other evidence. It is also the law that to warrant the conclusion that the accused is guilty of a transaction involving the theft of stolen property there must be, in addition to its possession by the defendant shortly after the commission of the crime, corroborating circumstances, acts, conduct or declarations of the defendant tending to show his guilt. The failure of the accused to account for such possession upon a theory inconsistent with his guilt of the offense charged, or to show that the possession was honestly obtained, is itself a circumstance tending to show guilt. (*People* v. *Gill*, 45 Cal. 285; *People* v. *Clough*, 59 Cal. 438; *People* v. *Roldan*, 93 Cal. App. 677 [270 Pac. 253]; *People* v. *Smith*, 79 Cal. 555 [21 Pac. 952]; *People* v. *Murphy*, 91 Cal. App. 53 [266 Pac. 374]; *People* v. *Crotty*, 70 Cal. App. 515 [233 Pac. 395]; *People* v. *Howard*, 58 Cal. App. 340 [208 Pac. 1022]; *People* v. *Miller*, 45 Cal. App. 494 [188 Pac. 52]; *People* v. *Cataline*, 54 Cal. App. 36 [200 Pac. 1060]; *People* v. *Hunter*, 59 Cal. App. 444 [210 Pac. 968]; *People* v. *Farrell*, 67 Cal. App. 128 [227 Pac. 210].) ■ The cases cited are also authority for the proposition that when property is found in the possession of a defendant shortly after it has been stolen the corroborating evidence required to sustain a conviction need be but slight, and that the rule is not only applicable to cases where the charge is larceny, but to all cases where the commission of the crime charged included the stealing of property. (Burglary: *People* v. *Smith*, 79 Cal. 554 [21 Pac. 952]; *People* v. *Murphy*, 91 Cal. App. 53 [266 Pac. 374]; *People* v. *Lang*, 142 Cal. 482 [76 Pac. 232]; *People* v. *Reed*, 58 Cal. App. 7 [207 Pac. 1025]; *People* v. *Howard, supra*, p. 344. Murder: *People* v. *Peete*, 54 Cal. App. 333, 346 [202 Pac. 51].) Among the circumstances which, coupled with the possession of stolen property, have been held sufficient to connect the accused with the crime and to sustain his conviction are flight (*People* v. *Scott*, 66 Cal. App. 200 [225 Pac. 767]); false statements showing consciousness of guilt (*People* v. *Peete, supra; People* v. *Roldan, supra*); false statements as to how the property came into defend-

ant's possession (*People* v. *Farrell, supra; People* v. *Hunter, supra; People* v. *Garcia,* 68 Cal. App.⸴ 131 [228 Pac. 670] ; *People* v. *Howard, supra;* assuming a false name and an inability to find the person from whom defendant claimed to have received the property (*People* v. *Cox,* 29 Cal. App. 419 [155 Pac. 1010]) ; sale of the property under a false name and at an inadequate price (*People* v. *Majors,* 47 Cal. App. 374 [190 Pac. 636] ; see, also, *People* v. *Lang, supra*) ; sale of the property with marks of identity removed and failure to account for its possession (*People* v. *Miller,* 45 Cal. App. 494 [188 Pac. 52]), and giving false testimony and an effort to throw away the stolen property (*People* v. *Crotty,* 70 Cal. App. 515 [233 Pac. 395]).

It appears, therefore; that the evidence was more than sufficient as a matter of law to sustain the conviction.

The order denying a new trial and the judgment are affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.