Filed 3/30/26  P. v. Rivera CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br>SEVION MICHAEL RIVERA,<br><br>     Defendant and Appellant.</td><td>A173596<br><br>(Humboldt County<br>Super. Ct. No. CR2202614)</td></tr>
</table>

After defendant Sevion Michael Rivera pleaded guilty to receiving stolen property (Pen. Code, § 496, subd. (a)),[1] he was placed on probation and ordered to pay $7,852.90 in victim restitution.  Defendant appealed from the restitution order.  In that appeal, we accepted the Attorney General's concession that there was an insufficient evidentiary basis for the restitution award, and therefore reversed the restitution order and remanded the matter for the trial court to conduct another restitution hearing.  (*People v. Rivera* (A169694, Nov. 21, 2024) [nonpub. opn.] (*Rivera I*).)

The trial court conducted such a hearing, after which it again ordered defendant to pay $7,852.90 in victim restitution.  Defendant appeals from that order, arguing the restitution award was improper because (1) he did not cause the victim's claimed loss and (2) the evidence was insufficient to

---

[1]     Further undesignated statutory references are to the Penal Code.

1

support the amount of the claimed loss.  We reject both contentions, and we affirm.

## BACKGROUND

### Prior Proceedings and the First Appeal

On September 19, 2022, the Humboldt County District Attorney filed a felony complaint charging defendant with first degree burglary (§§ 459, 460, subd. (a)) (count 1) and receiving stolen property with a value exceeding $950 (§ 496, subd. (a)) (count 2).

As recounted in our prior opinion, the probation report provided the following facts underlying the offenses:

"[O]n May 19, 2022, Davis D.,[2] the victim in this case and defendant's former friend, reported to the police that someone had broken into his apartment while he was out of town.  Davis reported that the following were missing:  several firearms (a Smith and Wesson model 60, a .38 special revolver, a Stoeger Arms shotgun, a Henry Repeating Arms AR-7 .22 rifle, and an AMT Backup semiautomatic .38 pistol), one box of miscellaneous ammunition, and 'other items.'  Davis's girlfriend also reported that her laptop and gaming console were taken from Davis's apartment.

"Davis told police that he believed defendant was the culprit based on their previous interactions.  Defendant and Davis recently had a falling out after defendant visited Davis's apartment and apparently became upset when he noticed a pair of his AirPods were missing.  Defendant threatened to break into Davis's apartment and steal some of his belongings.

"Later on May 19, Davis reported to police that defendant had contacted their mutual friend and that defendant may have given her some of

---

[2]     "We omit Davis's last name to protect his privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(4).)"

2

Davis's stolen property. A police officer contacted the mutual friend, who reported defendant had asked her to temporarily hold onto some of his belongings because he had been kicked out of his residence. She agreed to do so, and defendant dropped off the items in two large trash bags. When Davis informed his friend that the trash bags may possibly contain stolen firearms, she turned over the trash bags to the police.

"Inside the trash bags were a black Paradigm sub-woofer speaker; a pair of AKG N90Q headphones; a case of Norske drill bits; a Sony stereo; two Dewalt cordless drills; a silver Pro laptop; an Adidas bag; a Krome gun cleaning supply case; a DoorDash carry bag; a white Sony PlayStation 5 controller; a black Logitech computer keyboard; one pair of blue jeans; one Fanatec F1 gaming steering wheel; and an empty FN Five Seven pistol case." (*Rivera I*, *supra*, A169694.)

On March 16, 2023, defendant pleaded guilty to receiving stolen property as charged in count 2 in exchange for the dismissal of the burglary charged in count 1. The burglary count was dismissed without a *Harvey*[3] waiver.

On April 25, the trial court placed defendant on two years' probation subject to various terms and conditions, including that he pay direct victim restitution to be determined at a later hearing.

As we summarized the original proceedings on the issue of victim restitution: "On May 30, the People filed a motion for an order awarding Davis $7,852.90 in victim restitution. Attached as 'Exhibit A' to the motion were screenshots of various items listed on retail websites. These items were a set of used Klipsch speakers ($239.99); a 65-inch QLED TV ($3,999.99); a Yamaha receiver ($399.95); a Panasonic LCD display ($1,307.99); a Logitech

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

wireless keyboard and mouse set ($54.99); a Gamerstation gaming console ($1,550); a 'Pre-Built Entry Level Gaming PC' ($950); a 'Dell Latitude 10-Key Work/School Laptop' ($375 to $400); a Ryzen 5 gaming console ($650); and a Henry AR-7 semiautomatic rifle ($299.99). . . .

"On January 18, 2024, the trial court held a restitution hearing. The parties relied on the submitted documents and oral argument; neither presented any new evidence or testimony, including from Davis, who apparently was present at the hearing.

"Citing *People v. Holmberg* (2011) 195 Cal.App.4th 1310 and *People v. Scroggins* (1987) 191 Cal.App.3d 502, defense counsel argued 'there has to be a connection between the victim's loss and the defendant's crime,' and here, there was no evidence that defendant possessed the items claimed in Exhibit A to the People's restitution motion.

"The prosecutor responded, 'There most certainly is a connection to the defendant and the items that the People have addressed in their motion.' The prosecutor reasoned that defendant threatened to burglarize Davis's apartment 'because there was some thought that maybe the victim had taken his Airpods,' and '[l]ow [*sic*] and behold, the victim's apartment does shortly thereafter get burglarized.' The prosecutor went on, 'The defendant did plead guilty to being in receipt of stolen property. That property was the victim's property in this case.' The prosecutor then explained that although some items were returned to the victim, others were not, and that '[t]he items that the People have addressed in our motion here were the items that were not returned to the victim.'

"Following that argument, the trial court granted the People's motion and ordered the $7,852.90 sought in victim restitution. The court stated, '[Defendant] pled guilty to possession of stolen property, specifically, that

4

property belonging to the individual who provided the information that the District Attorney filed . . . [T]he named victim in the matter isn't requesting restitution for any items that had been returned, just for the items that were not returned.

"On January 19, defendant filed a notice of appeal." (*Rivera I*, *supra*, A169694, fn. omitted.)

In that appeal, defendant argued the trial court abused its discretion when it awarded Davis $7,852.90 in restitution because the People did not present sufficient evidence to support that award. The Attorney General conceded the point. We accepted the Attorney General's concession. (*Rivera I*, *supra*, A169694.)

We explained: "Defendant pled guilty to receiving stolen property, namely the items in the trash bags that he had entrusted to his and Davis's mutual friend and were eventually turned over to the police. In the restitution motion and at the hearing, the prosecutor represented that the items set forth in Exhibit A to their motion: (a) were the same items that were contained in the trash bags recovered by the police; (b) belonged to Davis; and (c) were never returned to Davis. Thus, the prosecutor argued that Davis was entitled to recover the value of the items set forth in Exhibit A. However, as the Attorney General acknowledges, the People presented insufficient evidence to support their representations.

"For one, there were several items in Exhibit A that were never reported as stolen, much less found in the trash bags in defendant's possession and later recovered by police. Those items included, for example, a flat screen television, a Yamaha receiver, a Panasonic flat screen LCD monitor, and three gaming computers. Moreover, although other items in Exhibit A appear to be similar to the stolen items in the trash bags—for

5

example, subwoofer speakers, a Logitech keyboard, and a laptop—the People did not present evidence demonstrating that those items belonged to Davis, and, assuming that they did belong to him, that they were *not* returned to him.

"Therefore, as the Attorney General acknowledges, the record does not contain evidence that 'any of the items claimed were stolen from [Davis] and not recovered.' Indeed, the People did not ask Davis to submit a declaration, testify, or otherwise explain the actual losses he sustained. In sum, we agree with the parties that the trial court abused its discretion in awarding Davis $7,852.90 in restitution because the award lacks an adequate factual basis. Accordingly, the restitution order must be vacated, and the matter remanded to the trial court for a new restitution hearing." (*Rivera I*, *supra*, A169694.)

**The Second Restitution Hearing**

Following remand, on June 13, 2025, the trial court conducted a new restitution hearing. The court took judicial notice of Exhibit A to the People's restitution motion, and this time, Davis testified. His testimony was as follows:

Davis returned home one day and found his residence had been burglarized. He then called his friend "Nesta," who was also a close friend of defendant's. Nesta said defendant had told her "that that night he got kicked out of his brother's house and wanted to bring some belongings over to her house," which he did.

Davis asked Nesta what the belongings were, and she said they were in black bags. Davis asked her to look inside the bags. Nesta, who had "been to [Davis's] house plenty of times" said, " 'Wow, it's all your stuff,' " before "crying and freaking out thinking she was going to get in trouble." Davis recovered the items in the trash bags and was not seeking restitution for those items.

6

Referring to the list of items in Exhibit A to the People's motion, Davis testified that there were other items of his that were taken during the burglary, not contained in the trash bags, and never returned to him: speakers, a Samsung television, a Yamaha stereo, a Panasonic monitor, a wireless keyboard and mouse, a gaming computer, and a Survivor .22-caliber rifle. The combined value of these items was $7,852.90.

Davis said he believed he was entitled to receive this amount from defendant because while Davis was out of town, defendant "came into [his] home, took everything out and brought half of it to Nesta's house," and then he "never saw anything again." Davis said that defendant "had threatened to do this to [him] a number of times before it happened," that defendant became "more . . . and more upset" from several altercations they had in the weeks leading up to the burglary, and that he believed from the beginning that defendant was the person responsible for it.

Following this testimony, the prosecutor argued that "the People have proven beyond a reasonable doubt that [Davis's] house was burglarized, that items from his house were found in Nesta's house which [defendant] brought to Nesta's house. Additionally, he did claim that he didn't receive some of his property back. Those are the bigger items that probably couldn't fit in a trash bag."

Defense counsel argued that defendant had been convicted of receiving stolen property, not burglary, and that the People did not show a "sufficient nexus between the amount requested and the crime for which [defendant] was convicted." Counsel also argued that the People presented hearsay evidence to "implicate [defendant] in the burglary for which he was never convicted." Counsel went on to argue that while Davis "no doubt . . . believes that [defendant] committed the burglary based on the stolen property being

7

in his possession," that was not "enough for the Court to hold [defendant] responsible for [the burglary]."

Following that argument, the court rejected defendant's assertion that there was not a causal connection between his criminal conduct and the losses claimed by the victim, whose testimony the court found credible. The court found that the evidence of defendant's possession of stolen property, the crime to which he pled guilty, "did contribute to the victim's loss in this case." The court thus "order[ed] restitution in the amount requested." It then directed the prosecution to "file an Order After Hearing for restitution in that amount."

The court then asked the parties if they wished to address additional matters, to which the prosecutor mentioned that Davis "has received approximately 300 to $400 already from revenue recovery prior to the appeal going through . . . ." The prosecutor then asked that defendant "get credit for the monies . . . that [Davis] has already received and I think that can be settled through Revenue Recovery."

The court agreed that defendant "should get credit for the money he's paid thus far." The court stated: "I'm going to leave that to counsel to determine what amount has been ordered. I think in terms of the Order After Hearing there should be an indication of that total amount. But I'll make it clear that any monies that have been paid by [defendant] towards restitution should apply against the Order that's going to be submitted by [the prosecutor] here shortly."

On June 20, defendant filed a notice of appeal.

On June 25, the court sent the parties a "Notice of Hearing" set for July 9, indicating that "[t]he matter is being scheduled for clarification of restitution amount in order to have the exact amount of restitution

8

determined by the Judicial Officer. It did not appear in the minutes or in the reporter's transcript what the final restitution amount ordered at the Restitution Hearing was." Such a hearing was held on July 9, and on that same day, the court entered its "Order for Victim Restitution," which indicated that defendant was ordered to pay Davis $7,852.90 in victim restitution.[4]

## DISCUSSION

### General Legal Principles and Standard of Review

"Restitution is constitutionally and statutorily mandated in California. ([Citation]; Cal. Const., art. I, § 28, subd. (b).) The constitutional mandate for restitution is carried out through Penal Code section 1202.4 . . . ." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045, fn. omitted.) A victim's right to restitution is to be broadly and liberally construed. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

Section 1202.4, subdivision (f) states, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) Restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).)

"A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall." (*People v.*

---

[4] Assuming without deciding that defendant's notice of appeal was premature since it was filed before the issuance of the July 9 "Order for Victim Restitution," we "treat the notice as filed immediately after the rendition of . . . the making of the order." (Cal. Rules of Court, rule 8.406(d).)

*Chappelone* (2010) 183 Cal.App.4th 1159, 1172 (*Chappelone*).) "A defendant is entitled to a restitution hearing to 'dispute the determination of the amount of restitution.' " (*Ibid.*) "The victim must make a prima facie showing of the loss, which the defendant is entitled to rebut. 'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim.' " (*People v. Pittman* (2024) 99 Cal.App.5th 1252, 1258.)

On appeal, we review a restitution order for abuse of discretion. (*Chappelone*, *supra*, 183 Cal.App.4th at p. 1172.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) No abuse of discretion will be found if there is a factual and rational basis for a victim restitution order. (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562.)

Under the substantial evidence standard, "our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment [or order]." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.)

### The Restitution Order Was Not an Abuse of Discretion
#### *Causation*

Defendant's first argument is that there was no evidence that the losses claimed by Davis were caused by defendant's criminal conduct. As a

result, defendant contends that the restitution order does not comply with section 1202.4 and consequently amounts to an abuse of discretion. We disagree.

As noted previously, section 1202.4, subdivision (f)(3) provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred *as the result of the defendant's criminal conduct*." (Italics added.) Courts have interpreted that provision to require a causal connection between the defendant's criminal conduct and the damages claimed by the victim. (See *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321 (*Holmberg*); *People v. Jones* (2010) 187 Cal.App.4th 418, 424–427.) The "requirement that the damages result from the defendant's criminal conduct" means that the criminal conduct must be both a " ' " 'necessary antecedent' " ' " and a " ' "proximate cause" ' " of the damages. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1321.) "California courts have adopted the 'substantial factor' test for analyzing proximate cause." (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*Holmberg*, *supra*, 195 Cal.App.4th at pp. 1321–1322.) Moreover, there can be multiple causes that can combine and cause injury. (*Id.* at p. 1322.)

Several cases help to explain the meaning of causation in restitution cases. In *People v. Scroggins* (1987) 191 Cal.App.3d 502 (*Scroggins*), the defendant lived in an apartment with his sister. Four apartments in their

11

complex were burglarized and several items were taken, including video cassette recorders, televisions, cameras, jewelry, telephone answering machines, purses, and a blood pressure cuff. (*Scroggins*, *supra*, 191 Cal.App.3d at p. 504.) The defendant's sister discovered three of the stolen items, all belonging to one victim, in her apartment and called the police. (*Ibid.*) Scroggins pleaded guilty to receiving stolen property. At sentencing, the probation department reported that the value of the "still missing property" from the other three burglaries was $2,366. (*Ibid.*) The court granted probation and ordered Scroggins to pay $2,366 in victim restitution. The appellate court reversed. It explained that "Scroggins was never charged with or found criminally responsible for the burglaries." (*Id.* at p. 506.) Since Scroggins instead was convicted of receiving stolen property, and the stolen items were recovered by the police and returned to the victim, the trial court erred in ordering restitution to the three remaining victims where there was no evidence that Scroggins was responsible for their losses. (*Ibid.*)

*Holmberg*, *supra*, 195 Cal.App.4th 1310 is also instructive. There, the defendant pleaded no contest to receiving stolen property that had been taken in the course of several burglaries, and was ordered to pay victim restitution. (*Id.*, at pp. 1315, 1316, 1318.) On appeal, he argued that "his conduct was not a substantial factor in causing the victims' losses because their losses were due to the burglary or theft." (*Id.* at p. 1318.) The court rejected that claim, concluding that the defendant's conduct was a "concurrent cause of the victims' losses and a substantial factor in depriving them of the use of their property." (*Id.* at p. 1322.) The court reasoned that "[t]here was evidence that defendant received the stolen property on the day it was stolen" and the defendant "admitted he knew the property was stolen when he possessed it." (*Ibid.*) Because "nothing prevented defendant from

12

turning over the known stolen items to the police," his "concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property." (*Ibid*.) For this reason, the *Holmberg* court found *Scroggins* distinguishable. (*Holmberg*, at pp. 1322–1333.)

Defendant argues the order to pay restitution to Davis was analogous to the restitution order overturned in *Scroggins*. He emphasizes that he pleaded guilty to receiving stolen property, and that although he was charged with burglary, that count was dismissed. And he asserts that "[t]he record shows that the claimed unrecovered losses flowed from the residential burglary, not from the possession of stolen property offense to which [defendant] initially pled no contest. . . ." Defendant goes on, "What is more, if [the items for which restitution was sought] were not in the black trash bags that the victim testified his friend held onto for [defendant], then there is no evidence that [defendant] was ever even in possession of the unrecovered items. Thus, there was no evidence that the crime for which [defendant] was convicted, receiving stolen property, caused the economic loss to the victim."

The Attorney General, on the other hand, maintains that *Scroggins* is distinguishable, explaining: "In *Scroggins*, there was no evidence linking the defendant to any of the burglaries, let alone all four. Although unclear, it does not appear that the defendant in *Scroggins* possessed items from all four burglarized apartments. Nor was there any evidence about when or how the defendant obtained the stolen items, or who had committed the burglaries." The Attorney General asserts: "Here, in contrast, while not convicted, [defendant] was in fact charged with the burglary and it was only dismissed as part of the plea bargain. Additionally, the evidence at the restitution hearing established that [defendant] made repeated threats to burglarize

13

Davis in the period leading up to the burglary. Then, immediately after the burglary, [defendant] attempted to conceal multiple trash bags full of Davis's stolen property. Based on these facts, it was reasonable to conclude by a preponderance of the evidence that [defendant] was involved in the burglary in some capacity and received the items that were stolen from Davis, including those which were never recovered. Accordingly, the trial court did not abuse its discretion in order that [defendant] compensate Davis for the unrecovered items."

In his reply brief, defendant argues that accepting the Attorney General's argument, which relies on facts underlying the dismissed burglary count, "would circumvent *Harvey*."[5] Defendant also appears to assert that even if that evidence is considered, there still was insufficient evidence to establish he was responsible for the losses claimed by Davis.

Initially, we address the *Harvey* issue. As we explained *People v. Weatherton* (2015) 238 Cal.App.4th 676, 678: In *Harvey*, *supra*, 25 Cal.3d 754, "our Supreme Court held that facts underlying charges dismissed as part of a negotiated plea may not, absent contrary agreement by the defendant (now called a *Harvey* waiver), be used to impose adverse sentencing consequences. The principle expanded to cover victim restitution

---

[5] As discussed above, at the restitution hearing the People presented and relied on evidence underlying the dismissed burglary count. Defense counsel did not object on *Harvey* grounds; instead counsel asserted that the People's evidence "contain[ed] much hearsay" and was not "enough" to establish that defendant committed the burglary, as well as that there was no causal connection between the crime of which he was convicted and Davis's claimed losses. Thus, the trial court did not have an opportunity to address whether there was a violation of *Harvey*. However, we need not decide forfeiture, because in any event we would exercise our discretion to address the issue given that the relevant underlying facts are not in dispute, and to foreclose any claim of ineffective assistance of counsel.

14

[citation], and was soon codified.  (Stats. 1988, ch. 287, § 1, p. 989, adding Pen. Code, § 1192.3, subd. (b) ['If restitution is imposed which is attributable to a count dismissed pursuant to a plea bargain, . . . the court shall obtain a waiver pursuant to [*Harvey*, *supra*,] 25 Cal.3d 754 from the defendant as to the dismissed count.'].)"

There is, however, an exception to this rule.  *Harvey* allows a trial court to consider facts underlying a dismissed count if that conduct is "transactionally related to the offense to which the defendant pleaded guilty." (*Harvey*, *supra*, 25 Cal.3d at p. 758, italics omitted.)  A transactional relationship exists where "it could at least be inferred that some action of the defendant giving rise to the dismissed count was also involved in the admitted count." (*People v. Beagle* (2004) 125 Cal.App.4th 415, 421.)

The Attorney General acknowledges that the People did not obtain a *Harvey* waiver when the burglary charge was dismissed as part of defendant's plea.  However, the record supports a finding that the dismissed burglary count and the admitted receiving stolen property count were "transactionally related."

Defendant does not dispute the Attorney General's assertion that the evidence demonstrated defendant "was involved in the burglary in some capacity."  As set forth above, the evidence indisputably showed that defendant had threatened to burglarize Davis in the weeks leading up to the burglary; Davis's residence subsequently was burglarized; his property was stolen during that burglary; defendant was in possession of some of the stolen property; and that defendant falsely told Nesta that the property was his when he dropped off some of the items in the trash bags.  The trial court could reasonably infer from the circumstances that defendant was involved in the burglary and the theft of the property taken during the burglary.  (Cf.

15

*People v. Russell* (1932) 120 Cal.App. 622, 625 ["to warrant the conclusion that the accused is guilty of a transaction involving the theft of stolen property there must be, in addition to its possession by the defendant shortly after the commission of the crime, corroborating circumstances, acts, conduct, or declarations of the defendant tending to show his guilt," such as, for example, "false statements as to how the property came into defendant's possession"]; accord, *People v. Citrino* (1956) 46 Cal.2d 284, 288 [possession of property stolen in a burglary alone is not sufficient to sustain a conviction of that burglary, but may be sufficient where there is corroborating evidence, even if slight, of acts or conduct of the accused tending to show guilt].) Indeed, defendant concedes that "[t]he evidence of threats of timing might have supported a burglary conviction."

Accordingly, on this record "it could at least be inferred that some action of the defendant giving rise to the dismissed [burglary] count was involved in the admitted [receiving stolen property] count." (*People v. Beagle*, *supra*, 125 Cal.App.4th at p. 421.) It follows that the Attorney General's reliance on facts underlying the burglary count does not "circumvent *Harvey*."

We next address whether the evidence as a whole, including the evidence underlying the dismissed burglary count, was sufficient to support the court's conclusion that defendant's conduct proximately caused the losses claimed by Davis. We conclude it was.

As just discussed, there is no dispute that defendant was in possession of some of the items stolen during the burglary of Davis's residence, and the evidence raised the reasonable inference that defendant was involved in that burglary. That some of the stolen items—speakers, a television set, a stereo, a monitor, a wireless keyboard and mouse, a gaming computer, and a .22-caliber rifle—were not discovered by the police or found in defendant's

16

possession does not undermine the reasonable inference that those items were lost as a result of defendant's criminal conduct. The evidence showed only one burglary; no evidence was introduced of another burglary. Moreover, there was no evidence that Davis's property went missing at different times; Davis simply testified that when he came home to find his house burglarized, his personal property (both the items later found in the trash bags, as well as the other items he would eventually never recover) was no longer there. Based on this, the court could reasonably infer that the unrecovered items were stolen during the same burglary. Consequently, we conclude there was substantial evidence to demonstrate that defendant's conduct played more than a negligible or theoretical part in bringing about Davis's losses and thus was a substantial factor in causing those losses. (See *Holmberg*, *supra*, 195 Cal.App.4th at pp. 1321–1322.)

In sum, the trial court did not abuse its discretion in ordering defendant to pay restitution for the losses claimed by Davis.

### *Amount of the Restitution Award*

Defendant's second argument is that the evidence was insufficient to support a prima facie finding that the value of the stolen property was "the replacement cost of like property," as required by section 1202.4, subdivision (f)(3)(A).[6] Again, we disagree.

Section 1202.4 provides that "[t]he value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).) Thus, "the

---

[6] Defendant acknowledges that this counsel did not object to the restitution order on this specific ground, but argues that if we were to find forfeiture based on counsel's failure to object, counsel provided ineffective assistance. We need not address forfeiture because even if we were to consider the claim on the merits, it fails.

People were required to make a prima facie showing of the replacement value of the stolen property." (*People v. Pittman, supra,* 99 Cal.App.5th at p. 1262.)

Defendant acknowledges that "the valuation evidence consisted of Exhibit A—retail website screenshots," but contends this was insufficient evidence of replacement value because the People did not present any evidence of "when the items were acquired, the condition they were in, whether they were current or prior-generation models, whether comparable used replacements were available, or what it would cost to replace them with like property." Relying on *People v. Thygesen* (1999) 69 Cal.App.4th 988 (*Thygesen*), defendant argues that "without age/condition evidence, a court cannot rationally equate brand-new pricing with the amount needed to make the victim whole for these items. This argument is unavailing.

In *Thygesen*, the defendant rented but failed to return a cement mixer. He eventually pleaded guilty to theft of the mixer. The trial court ordered restitution for 13 months of lost use, calculated by multiplying the mixer's monthly fee times 13. (*Thygesen, supra,* 69 Cal.App.4th at p. 991.) *Thygesen* held that loss of use was a proper basis for a restitution award (*id.* at p. 994), but that the formula used by the trial court to calculate loss of use was flawed, in that "there was absolutely no evidence presented to the trial court from which a rational determination as to" lost use could have been made. (*Id.* at p. 995.) To accurately determine the value of lost use, the trial court should have considered factors such as, inter alia, how often the item was rented and how much revenue its rent historically produced. No evidence was presented from which the trial court could have made these calculations. (*Ibid.*)

*Thygesen* is inapposite. Here, unlike in *Thygesen*, the trial court was not faced with a complicated calculation of loss of use; instead, the victim in

18

this case apparently had a more straightforward claim of economic loss—i.e., the actual value of the items that were stolen, which, we imagine, can be found with minimal effort and in fairly short order. Indeed, as *Thygesen* recognized, "[l]osses to victims will vary from case to case. For example, in a situation involving a victim who has a ring or necklace stolen, there may be no economic loss other than the actual value of the ring or necklace." (*Thygesen, supra*, 69 Cal.App.4th at p. 994.)

*Thygesen* is further distinguishable because in that case there was "absolutely no evidence presented . . . from which a rational determination as to either type of loss could have been made." (*Thygesen, supra*, 69 Cal.App.4th at p. 995.) There was such evidence here. Davis testified that the items that were stolen from, and never returned to, him were speakers, a Samsung television, a Yamaha stereo, a Panasonic monitor, a wireless keyboard and mouse, a gaming computer, and a Survivor .22-caliber rifle. He testified that the combined value of these items was $7,852.90. That amount was consistent with Exhibit A to the People's restitution motion, which consisted of screenshots of various retail store website listings of the same or like items, the combined value of which was $7,852.90.[7] Such evidence was sufficient to make a prima facie showing of Davis's economic loss. (See *Chappelone, supra,* 183 Cal.App.4th at p. 1172 [" 'a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss.' "].)

Once the People made a prima facie showing of Davis's loss, " ' "the

---

[7]     Specifically, Evidence A included the following items and pricing: Klipsch speakers ($ 239.99); 65-inch QLED TV ($3,999.99); a Yamaha stereo receiver ($399.95); a Panasonic LCD display ($1,307.99); a Logitech wireless keyboard and mouse set ($54.99); a "Gamerstation Budget Gaming PC" ($1,550.00); and a Henry AR-7 .22-caliber rifle ($299.99).

burden shift[ed] to . . . defendant to demonstrate that the amount of the loss is other than that claimed by the victim." ' " (*Chappelone, supra*, 183 Cal.App.4th at p. 1172.)  Defendant did not do so.  Therefore, the court did not abuse its discretion in ordering him to pay restitution to Davis in the amount of $7,852.90.

## DISPOSITION

The victim restitution order is affirmed.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A173596N)